PER CURIAM.
This is an appeal from a final judgment in a medical malpractice action brought by appellant, Tina Hargrove, in which the trial court entered judgment for appellee, Dr. James Howell, in accordance with the jury’s verdict absolving him from all liability. Appellant and appellee raise, a number of issues. We affirm all, but specifically address appellant’s claim that the trial court erred in allowing a defense expert, Dr. Michael Foley, to testify at trial regarding matters not disclosed in his pretrial deposition.
The gravamen of appellant’s complaint rested upon the testimony of her witness, Dr. Robert Wears, an expert in emergency medicine, regarding the standard of care Dr. Howell exhibited in his treatment of the personal representative’s decedent, Henry Hargrove. Dr. Wears testified that had Dr. Howell conducted proper testing for decedent’s condition when he first presented himself at Dr. Howell’s office complaining of severe abdominal pain, Dr. Howell could have diagnosed Hargrove’s condition as a dissecting aorta, rather than, as he had erroneously done, dyspha-gia (difficulty in swallowing), esophageal stricture, muscular strain, and possible traumatic degenerative joint disease. In the expert’s opinion, Dr. Howell should have, based upon Hargrove’s symptoms, ordered more tests,[1] thereby leading to Hargrove’s hospitalization for evaluation, investigation of the cause of pain, and surgical intervention, which in turn could have avoided the patient’s death, occurring two days following the initial consultation. Dr. Wears concluded that if a person is correctly diagnosed with dissecting aorta and treatment is commenced, the patient has a 75 percent chance of survival.
In defense, Dr. Howell relied primarily on the opinion of Dr. Michael Foley, a radiologist, who examined Hargrove’s medical records,- esophagram, and upper GI series. Consistent with his earlier deposition-testimony, Dr. Foley agreed with Dr. Howell’s diagnosis that the records disclosed mild to moderate esophagitis, and that there was no evidence in them of an aortic dissection or rupture. He additionally testified, apparently based on his own independent research, that 98 percent of patients with Type A aortic dissection, which is what Hargrove had, die within six hours from symptom onset before reaching a hospital, and of the remaining two percent who are admitted, the mortality rate is 45 percent.
Plaintiff objected to the additional testimony, claiming surprise, and the objection was overruled. During cross-examination of Dr. Foley, Hargrove attempted to impeach him by referring to a text on internal medicine, which the trial court had ruled was authoritative. The following colloquy occurred:
Q: [Plaintiffs counsel] Do you agree or disagree with this sentence? “The overall in-hospital mortality rate, after surgical treatment of patients with aortic dissection, is reported to be 15 to 20%.”
A: It’s in the ballpark. As we said before, the overall in-hospital mortality is 25%. You’re reading out of Harrison’s I believe.
Q: Yeah.
A: I am quoting the International Registry of Aortic Dissections, which is the *962 world’s largest series of aortic dissections of those that make it to the hospital. I don’t know what the date of your book is, but my reference is—
Q: I need you to stop and we need to approach.
Hargrove objected that the witness was not permitted to quote from an authoritative source, the International Registry of Aortic Dissections (IRAD) study, to bolster his opinion. The court overruled the objection, stating that bolstering a witness’s testimony is prohibited in direct examination, but not during cross-examination.
We agree with Hargrove that the lower court erred in permitting the testimony; we disagree, however, that the error required reversal. Dr. Foley’s reference to the IRAD study, not revealed during his deposition, constituted an improper bolstering of his opinion, and the fact that it was made during cross-examination, rather than on direct, is immaterial. See Tallahassee Mem’l Reg’l Med. Ctr. v. Mitchell, 407 So.2d 601 (Fla. 1st DCA 1981) (observing that an expert may rely on facts or data that are inadmissible as the basis of an opinion, but may not bolster his opinion during cross-examination by using a medical treatise to support his testimony before the jury); Green v. Goldberg, 630 So.2d 606 (Fla. 4th DCA 1993) (commenting that authoritative publications can be used during cross-examination of an expert under section 90.706, Florida Statutes, but may not be used to bolster the expert’s credibility or to supplement an opinion that has been formed, because statements in a learned treatise may not be used as substantive evidence).
Nevertheless, we consider the error harmless. The single comment regarding the study, made by Dr. Foley during the course of a four-day trial, was never again mentioned. Moreover, much of the surprise that appellant complains of was the result, in large measure, of her not conducting a more thorough deposition examination of appellee’s expert. As the Florida Supreme Court observed in Binger v. King Pest Control, 401 So.2d 1310, 1313, n. 7 (Fla.1981), a party has an obligation to conduct sufficient discovery to ascertain the nature of the testimony to be offered by a witness. The failure of Dr. Foley to testify during his 14-page deposition about causation and survival rates of persons suffering aortic dissections is reasonably explained by the fact that he was never asked such questions. Indeed, during the deposition, defense counsel proffered the areas he expected the witness to testify about at trial, which would include the “concerns” mentioned by Dr. Wears that a chest x-ray should have been taken. Because the central issue before the jury was whether Dr. Howell’s conduct in the treatment of his patient deviated from the reasonable standard of care, we believe that Hargrove should have logically anticipated that Dr. Foley would testify concerning survivability rates. In other words, counsel should have anticipated the defense effort to offset the testimony of Hargrove’s expert, who opined that if Dr. Howell had properly tested and hospitalized the decedent, it is probable he would have survived, because there is a 75 percent rate of survival if a dissecting aorta condition is promptly diagnosed and treated.
In deciding whether the testimony of an undisclosed witness should be excluded, the primary factor to consider is whether the use of such testimony will prejudice the objecting party. Binger, 401 So.2d at 1314. Applying this test to the instant case, our review of the record fails to show how appellant was prejudiced by the use of the undisclosed testimony. Appellant claims that Dr. Foley “lied” when he testified that the mortality rate of patients with Type A aorta dissections is 45 percent of the two percent of those who live long enough to reach the hospital. *963 She cites one IRAD exhibit showing instead the rate to be 32.5 percent.[2] It does not appear, however, from the record that when Dr. Foley referred to the IRAD study, he was using the study to bolster his earlier trial testimony that 45 percent of Type A patients died during hospital treatment. The single reference the witness made to the IRAD study appears to have been used as support for his agreement with appellant’s expert, who had stated that the overall hospital death statistics of patients with aortic dissection were 25 percent.[3] In fact, another IRAD exhibit, offered by appellee in opposition to the motion for new trial, effectually corroborated the overall death rates given by both experts, listing the total hospital mortality rate at 27.4 percent.
AFFIRMED.
ERVIN and BOOTH, JJ., and SMITH, Senior Judge, concur.

. In Dr. Wears’ opinion, Dr. Howell should have taken a chest x-ray and performed an EKG on Hargrove.

. This material was not introduced during trial; it was attached to appellant's motion for new trial.

. The expert, Dr. Wears, did not differentiate between Type A and Type B rates.