917 So.2d 1015 (2006)
Amber KING, Appellant,
v.
AUTO SUPPLY OF JUPITER, INC., and Associated Industries Insurance Company, Appellees.
No. 1D04-5232.
District Court of Appeal of Florida, First District.
January 5, 2006.
*1017 Kevin G. Bennett of Howard S. Grossman, P.A., Boca Raton, for Appellant.
Mary Ann Stiles and Rayford H. Taylor of Stiles, Taylor & Grace, P.A., Tampa and Atlanta, Ga., for Appellees.
ERVIN, J.
Amber King, claimant below in this workers' compensation appeal, challenges the judge of compensation claims' (JCC) denial of her claims for attendant care, modifications to her house made necessary by her disabling condition, and a determination that her left vocal cord paralysis was compensable. Because we agree that the JCC did not abuse her discretion in admitting into evidence the opinion testimony of claimant's treating physician, Dr. Jeffrey Farber, which opinion was that the requests for attendant care and related benefits were not medically necessary, we conclude the denial is supported by competent, substantial evidence. We further conclude that claimant did not preserve for review the issue relating to the compensability of claimant's vocal cord paralysis. As a consequence, we affirm all of the contested denials.
With regard to the JCC's reliance on Dr. Farber's opinion testimony that claimant had no need for attendant care and similar benefits, claimant argues that the JCC's admission of such evidence was a clear abuse of discretion in that the facts or data that Dr. Farber relied on in reaching his opinion were not the facts or data that experts in his field reasonably rely on. Claimant urges that this is so because the JCC had previously excluded the evidence supporting the physician's opinion, namely, a surveillance videotape and a typewritten surveillance report. Although this is a correct statement of the facts, it should be noted that the JCC excluded the evidence solely because of discovery violations committed by the employer/carrier (E/C), not because the evidence was explicitly deemed unreliable or untrustworthy.
Before expressing an opinion that claimant had no need for attendant care, Dr. Farber previously had recommended six to seven hours of daily care. The edited surveillance videotape and report displayed to him during his deposition,[1] which led him to recant, had never been produced or formally listed on any pre-trial stipulation. The day following Dr. Farber's deposition, claimant moved to strike all surveillance videotapes and reports, based upon both purported discovery violations and the lack of any foundation for their admission into evidence as an exception to the hearsay rule under the business records exception. See § 90.803(6), Fla. Stat.
The JCC considered the motion the first day of the merits hearing, where counsel for claimant argued that the surveillance report and the edited videotape were inadmissible as business records because the statute requires that business records must be prepared from information received by or from individuals with personal knowledge of their preparation, and because Louis Ferlanti, as records custodian of the surveillance company, lacked the requisite knowledge for their admission since he had neither performed the actual surveillance, nor had he prepared any of the surveilling investigators' handwritten notes, which a transcriptionist other than Ferlanti typed and Ferlanti reviewed. Moreover, Ferlanti did not know whether the information contained on the edited *1018 composite videotape matched that on the individual videotapes from which the edited tape was derived. The JCC, without specifically acting on the motion, instructed the E/C's counsel on what she perceived to be the proper means of authenticating the evidence by conducting a post-hearing deposition of the various investigators who actually conducted the surveillance. The JCC commented that she did not believe Ferlanti was the appropriate person to authenticate the tapes or reports. The depositions were, however, never completed because claimant later filed an emergency motion to strike all surveillance evidence based on the E/C's "gross and repeated violations of the rules governing pre-trial practice and procedure." The JCC granted the motion, citing the E/C's continuing breach of its discovery obligations.
Whether the JCC erred in allowing into evidence Dr. Farber's opinion testimony, which was the basis for her order denying the requested attendant care, turns on a proper interpretation of section 90.704, Florida Statutes, and implicates de novo review. This provision authorizes the reception of an expert's opinion, even though the facts or data underpinning the opinion may be inadmissible, if the expert can reasonably rely on those facts or data. To a large extent, the answer to the question of the opinion's admissibility depends on the trustworthiness of the information supporting the opinion. The fact that the JCC barred the admission of the surveillance evidence for the specific reason that its proponent had violated pre-trial rules governing discovery has no effect on its trustworthiness or reliability. If, however, the source of the information could be said to be inherently untrustworthy and not qualify for admission under the business records exception, Dr. Farber's opinion testimony may have been substantially compromised by his reliance on such information. Thus, if it were not shown that the disputed information was kept in the regularly conducted practice of the business activity, as section 90.803(6) requires, it is highly questionable that this is the type of material an expert would reasonably rely on to support the opinion expressed.
While the JCC did not expressly state that the surveillance information kept by Ferlanti was inadmissible hearsay, her comments clearly indicated that, without the testimony of the persons who actually conducted the surveillance, it would not qualify as a business exception to the hearsay rule. Section 90.803(6), however, does not require as a predicate to the evidence's admission, as the JCC apparently believed, that the persons employed by the investigative agency who performed the surveillance must themselves testify.
The foundational elements for admission under section 90.803(6)(a) compel a showing that the business record was: (1) made at or near the time of the event; (2) by or from information transmitted by a person with knowledge; (3) kept in the course of a regularly conducted business activity; and (4) that it was the regular practice of that business to make such a record. Jackson v. State, 738 So.2d 382, 386 (Fla. 4th DCA 1999). All of the requirements were established through the testimony of Louis Ferlanti, the owner, president, and records custodian of Identifax Investigative Services. The only substantial challenges that claimant makes as to their admissibility under the business records exception are that Ferlanti did not personally conduct any of the surveillance shown to Dr. Farber, that he did not know if he or someone else in his office had prepared the edited videotape, and that he admitted the typewritten surveillance reports were not a verbatim transcription of *1019 the investigator's observation (because a transcriptionist had typed the reports and the office manager had edited them while reviewing the videotapes).
Despite the JCC's concerns regarding the authentication of the proffered evidence, the statute's requirement that the business record must be established by or from information transmitted by a person with knowledge was satisfied by Ferlanti's testimony that the initial suppliers of the information (his employed investigators) were acting within the course of business. In this regard, Professor Ehrhardt makes the following pertinent comments:
The person making the entry in the record does not need to have personal knowledge of the matter recorded. However, the information contained in the report must be supplied by a person with knowledge who is acting within the course of the regularly conducted business activity. If the initial supplier of information is not acting within the course of business, the information in the record cannot qualify for admission. For example, if a third-party witness is quoted in a business record concerning a particular fact, the evidence of that statement is not admissible under section 90.803(6), although it may be admissible under another exception.
See Charles W. Ehrhardt, Florida Evidence § 803.6 at 787-88 (2004) (footnotes omitted). Thus, in Reichenberg v. Davis, 846 So.2d 1233, 1234 (Fla. 5th DCA 2003), reports of investigators for the Child Protection Team and the Department of Children and Families, which contained witness interviews, were inadmissible under the statute because "they were not based upon the personal knowledge of an agent of the `business.'"
Ferlanti testified that his duties as president of Identifax included reviewing reports and videos, assigning work to investigators and receiving all the work back from the investigators. He identified from the reports the dates the surveillance began and concluded. He also testified that the records of the surveillance he had brought with him were kept in the regular course of the business. Ferlanti further stated that the investigators' handwritten notes were transcribed verbatim into typewritten reports. Such testimony satisfied the section 90.803(6) foundational requirement that they be made by or from information transmitted by a person with knowledge.
Claimant also argues that surveillance reports and documents that are prepared in anticipation of litigation are inherently untrustworthy, even if they otherwise satisfy the elements of the business records exception. In this regard, Professor Ehrhardt comments that if "a record is made for the purpose of preparing for litigation, its trustworthiness is suspect and should be closely scrutinized." Florida Evidence, § 803.6 at 786. Thus, in Stambor v. One Hundred Seventy-Second Collins Corp., 465 So.2d 1296, 1298 (Fla. 3d DCA 1985), a case claimant relies on, it was held that an accident report a restaurant manager prepared immediately after a slip-and-fall accident was inadmissible in that the report lacked the reliability which business records are ordinarily assumed to have. The facts there showed that the manager prepared the report solely for the purpose of defending the restaurant from a litigation claim by a patron who was injured while on the restaurant's premises. Because it was not the regular practice of the restaurant's business activity to make such report, the court properly concluded the report was inadmissible hearsay for lack of trustworthiness. In contrast, Ferlanti testified that surveillance was a regular practice of his company's business.
Even if it could be said that the JCC erred in allowing Dr. Farber's opinion *1020 into evidence on the theory that the trustworthiness of the surveillance tape and report was not of the type experts in the field reasonably rely on, the error was harmless because it is clear from the record that Dr. Farber did not base his opinion that attendant care was medically unnecessary solely on such evidence. Dr. Farber testified that the only reason he had earlier concluded that such care was necessary was because he had deferred to the report and recommendation of Andy Douglas, an occupational therapist, due to the fact that Mr. Douglas had observed claimant's activities over a much longer period of time, while his observations had been limited to an office environment. Dr. Farber reported that claimant never expressed to him any difficulty in engaging in the activities of daily living. Indeed, the claimant herself testified that the surveillance videotape was an accurate depiction of her activities during the time in question. Under the circumstances, we agree that the JCC did not abuse her discretion in admitting into evidence Dr. Farber's opinion testimony that claimant did not require attendant care benefits.
As for the JCC's purported error in denying her claim seeking compensability of her left vocal cord paralysis, claimant primarily argues that the E/C violated the 120-day provision of section 440.20(4), Florida Statutes, and thus waived its right to deny compensability of such condition. We affirm the denial of the claim because claimant failed to preserve her waiver argument by bringing it to the attention of the JCC during the trial of the cause.
AFFIRMED.
DAVIS, J., concurs; BENTON, J., concurs in the judgment.
NOTES
[1] Shortly before claimant deposed Dr. Farber, the E/C had deposed Louis Ferlanti, president of Identifax Investigative Services, who revealed for the first time, six days in advance of the final merits hearing, that individual surveillance videotapes existed.