WOLF, J.
 

 Claimant seeks review of an order denying her requested workers’ compensation benefits. While claimant raises several issues, only two merit discussion. Specifically, we reverse because we find the Judge of Compensation Claims (JCC) erred in excluding the medical opinion of an orthopedic physician, Dr. Richard Smith, who was at one time claimant’s authorized provider. Further, as a result of this erroneous exclusion, we likewise find the JCC erred in declining to order an expert medical advisor’s opinion (EMA) based on the disagreement of two admissible medical opinions as required by section 440.13(9)(c), Florida Statutes (Supp.1998).
 

 Prior to the benefits hearing, claimant requested an EMA, citing a disagreement in the opinions of two orthopedic provid
 
 *745
 
 ers, Dr. Smith and Dr. Jeffrey Rosen. Specifically, Dr. Rosen, claimants’ later authorized orthopedic provider, opined in his deposition that claimant’s accident was not a major contributing cause of her current knee condition. To the contrary, Dr. Smith, during his deposition, testified he believed the industrial accident was a “greater cause” for claimant’s “need for ongoing treatment” than any other cause. The JCC denied the request for an EMA, finding “the foundational support for the conflict did not exist because the opinion that reportedly established the conflict came from a physician whose opinions could not be accepted pursuant to section 440.13(5)(e).”
 

 Section 440.13(5)(e), Florida Statutes (Supp.1998), governs medical opinion testimony in workers’ compensation proceedings and provides in pertinent part:
 

 No medical opinion other than the opinion of a medical advisor appointed by the [JCC] or division, an independent medical examiner, or
 
 an authorized, treating 'provider
 
 is admissible in proceedings before the [JCC].
 

 (Emphasis added.)
 

 “The law is clear that a JCC errs in admitting the opinion testimony of a physician who does not fall into one of these categories.”
 
 Seminole County Sch. Bd. v. Tweedie,
 
 922 So.2d 1011, 1012 (Fla. 1st DCA 2006). Further, although not defined in chapter 440, an “authorized treating provider,” as the term is used in section 440.13(5)(e), Florida Statutes, means “a treating provider authorized by the E/SA.”
 
 Rucker v. City of Ocala,
 
 684 So.2d 836, 840 (Fla. 1st DCA 1996);
 
 see also Tweedie,
 
 922 So.2d at 1012 (holding “authorized treating provider” means “provider who has been authorized by an E/SA”). However, the question of whether a currently de-authorized provider who was, at one time, an authorized provider may qualify to provide testimony pursuant to section 440.13(5)(e) is a question of first impression before this court.
 

 A plain reading of the statute does not offer guidance. Specifically, the statute’s language provides only authorized physicians, independent medical examiners (IMEs), and EMAs may testify in workers’ compensation proceedings; however, the statute does not use the term “currently authorized treating provider” or otherwise suggest the authorization of the provider must be in existence at the time of the benefits hearing. Thus, because the statute is ambiguous on its face, this court must look to legislative intent.
 
 Murray v. Mariner Health,
 
 994 So.2d 1051 (Fla.2008) (holding when a statute is unclear or ambiguous on its face, the court must next determine legislative
 
 intent)(citing Starr Tyme, Inc. v. Cohen,
 
 659 So.2d 1064 (Fla.1995)).
 

 Section 440.13 was amended in 1993 to include subsection (5)(e), limiting medical opinion testimony to only EMAs, providers, and IMEs. See Ch. 93-415, § 17, Laws of Fla. The Governor’s reform proposal of 1993 outlined the general goals of these amendments and included one of those goals as limiting a perceived “doctor-shopping” problem. The Governor’s Worker’s Compensation Reform Proposal on Fla. S. Bill 12C, § 17 (1993), A Summary (Oct. 21, 1993). Further, section 440.015, Florida Statutes, which provides the legislative intent for the passing of Chapter 440, was likewise amended in 1993 to include the following pertinent language:
 

 .... It is the intent of the Legislature to ensure the prompt delivery of benefits to the injured worker. Therefore, an efficient and self-executing system must be created which is not an economic or administrative burden. The Divi
 
 *746
 
 sion of Workers’ Compensation shall administer the Workers’ Compensation Law in a manner which facilitates the self-execution of the system and the process of ensuring a prompt and cost-effective delivery of payments.
 

 See
 
 Ch. 93-415, Laws of Fla.
 

 We find that interpreting section 440.13(5)(e) to preclude the admission of a de-authorized physician’s medical opinion would contravene the purposes of both section 440.13(5)(e) and chapter 440. Specifically, this interpretation would enable an employer/servicing agency (E/SA) simply to de-authorize a physician at any time it does not want the opinion of that particular physician in evidence. Likewise, a claimant could preclude the admission of a physician’s disadvantageous opinion by simply requesting his or her one-time change, thereby requiring the E/SA to de-authorize the current treating physician. This type of “doctor shopping” stimulated the need to add section 440.13(5)(e) in 1993.
 
 See
 
 The Governor’s Worker’s Compensation Reform Proposal on Fla. S. Bill 12C, § 17 (1993), A Summary (Oct. 21, 1993), initiating the passage of Fla. SB 12-C (1993).
 

 In addition, gamesmanship of this sort defeats the underlying purpose of the workers’ compensation system to provide timely hearings and to allow for the prompt delivery of benefits to injured employees.
 
 See
 
 § 440.015, Fla. Stat. (2009). Specifically, last minute de-authorizations and authorizations of medical providers can cause meaningful delays in petition for benefits hearings and hinder a prompt determination of whether an injured employee is due payments and/or services.
 

 Further, interpreting section 440.13(5)(e) to preclude medical testimony of previously authorized treating physicians could lead to absurd and unintended results. There are countless examples evidencing the need for a common sense interpretation of section 440.13(5)(e). For instance, if an authorized physician determines an employee has a zero percent impairment rating and needs no further treatment, the physician is no longer
 
 treating,
 
 as the employee has no condition to treat. Surely this previously authorized, but no longer “treating” physician is permitted to testify as to the employee’s condition. This scenario demonstrates the difficulties that may arise with the interpretation of section 440.13(5)(e) suggested by appellee. Thus, we find the JCC erred in excluding Dr. Smith’s testimony because the statutory provision is ambiguous on its face, and interpreting section 440.13(5)(e) as a per se ban against all de-authorized treating physicians contravenes the statute’s stated purpose, as well as may lead to many unintended quagmires.
 
 *
 
 Further, because the JCC erred in excluding the testimony, the JCC likewise erred in failing to order an EMA as required when a disagreement arises between two admissible medical opinions pursuant to section 440.13(5)(e), Florida Statutes (Supp.1998). For the foregoing reasons, we reverse and remand for further proceedings consistent with this opinion.
 

 WEBSTER and THOMAS, JJ., concur.
 

 *
 

 We recognize while there may exist credibility concerns with providers who have not examined a claimant for a number of years, the provider's medical opinion would still be admissible pursuant to the statute; however, the weight and credibility to be given that testimony would remain at the discretion of the JCC.
 
 Raban v. Federal Exp.,
 
 13 So.3d 140, 144 (Fla. 1st DCA 2009)
 
 (citing Frederick v. United Airlines,
 
 688 So.2d 412, 413 (Fla. 1st DCA 1997)).