IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

LOWE'S HOME CENTERS,
INC. AND SEDGWICK CMS,

      Appellants,

v.

SANDRA K. BEEKMAN,

      Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D15-2639

Opinion filed March 4, 2016.

An appeal from an order of the Judge of Compensation Claims.
Stephen L. Rosen, Judge.

Date of Accident: July 17, 2013.

Kevin S. Murphy and Thomas A. Moore of Quintairos, Prieto, Wood & Boyer, P.A.,
Orlando, for Appellants.

Kimberly A. Hill of Kimberly A. Hill, P.L., Fort Lauderdale, for Appellee.


LEWIS, J.

In this workers' compensation appeal, the Employer/Carrier (E/C) raises three

issues, although the second and third issues are essentially subsumed within each

other. We affirm without comment as to the first issue – whether the Judge of

Compensation Claims (JCC) had jurisdiction to adjudicate the E/C's affirmative

defense of apportionment. We reverse, however, as to the second and third issues for the reasons that follow, and remand this matter for further proceedings.

Claimant's September 2014 petition for benefits requested authorization for right shoulder surgery. Thereafter, Claimant filed a notice of conflict advising the JCC that a disagreement existed between two of Claimant's physicians as to whether she was in need of rotator cuff repair surgery. The JCC found there was a disagreement in the medical opinions of two physicians with regard to diagnosis, causal relationship, and the recommended course of treatment for Claimant's right shoulder; thus, he found it was appropriate to appoint an expert medical advisor (EMA).

In a February 5, 2015, letter to the EMA, Dr. Vega, the JCC advised the doctor that "[t]he following issues must be addressed in your report: 1. Is surgery medically necessary for the claimant's right shoulder? 2. If surgery is medically necessary for the claimant's right shoulder, is the July 17, 2013 date of accident the major contributing cause of the need for the surgery?" Also on February 5, the parties filed pretrial stipulations that included, for the first time, an affirmative defense that "[s]hould the JCC find for Claimant, then the E/[C] is entitled to apportionment due to Claimant's pre-existing condition." In the course of testifying by deposition on April 21, 2015, Dr. Vega, opined that Claimant's condition was an aggravation of a pre-existing condition.

2

After hearing argument on Claimant's motion to strike Dr. Vega's testimony relating to the issue of apportionment, the JCC granted the motion in part. The JCC noted that neither party requested that a question be posed to the EMA specifically addressing apportionment. Further, the JCC found that the EMA's report did not address apportionment between any pre-existing conditions and the workplace accident; rather, the apportionment questions were raised for the first time in the deposition. The JCC announced that he would not rely on any opinions rendered by Dr. Vega regarding apportionment.

On appeal, the E/C takes issue with the JCC's exclusion of the EMA's opinion on apportionment, arguing in its second and third issues that the JCC erred as a matter of law in excluding relevant medical evidence. The exclusion of evidence is reviewed under an abuse of discretion standard. See Escutia v. Greenleaf Prods., Inc., 886 So. 2d 1059, 1060 (Fla. 1st DCA 2004). To the extent resolution of this issue requires statutory interpretation, the standard of review is de novo. See Lombardi v. S. Wine & Spirits, 890 So. 2d 1128, 1129 (Fla. 1st DCA 2004).

Because this question is one which has not been previously addressed – how broad is the brush of the presumption of correctness given to an opinion of an EMA – we begin our analysis with a review of the relevant statutory provisions. Section 440.13(9), Florida Statutes (2013), the provision addressing EMAs, provides in

3

subsection (a) that EMAs are to be certified "to assist . . . the [JCCs] within the advisor's area of expertise." Subsection (b) provides that EMAs are intended "to provide peer review or expert medical consultation, opinions, and testimony . . . to a [JCC] in connection with resolving disputes relating to reimbursement, differing opinions of health care providers . . . ." § 440.13(9)(b), Fla. Stat. (2013). Subsection (9)(c) in its entirety provides:

> If there is a disagreement in the opinions of the health care providers, if two health care providers disagree on medical evidence supporting the employee's complaints or the need for additional medical treatment, or if two health care providers disagree that the employee is able to return to work, the department may, and the [JCC] shall, upon his or her own motion or within 15 days after receipt of a written request by either the injured employee, the employer, or the carrier, order the injured employee to be evaluated by an [EMA]. The opinion of the [EMA] is presumed to be correct unless there is clear and convincing evidence to the contrary as determined by the [JCC]. The [EMA] appointed to conduct the evaluation shall have free and complete access to the medical records of the employee. An employee who fails to report to and cooperate with such evaluation forfeits entitlement to compensation during the period of failure to report or cooperate.

§ 440.13(9)(c), Fla. Stat. (2013). Thus, subsection (9)(c) references both general disagreements between health care providers and specific disagreements. It then simply states that "[t]he opinion of the [EMA] is presumed to be correct." Id. Section 440.25(4)(d), Florida Statutes (2013), provides in part:

> When there is a conflict in the medical evidence submitted at the hearing, the provisions of s. 440.13 shall apply. The report or testimony of the [EMA] shall be admitted into evidence in a proceeding and all costs incurred in connection with such examination and testimony may

4

be assessed as costs in the proceeding, subject to the provision of s. 440.13.

The process used in this case – whereby the JCC posed specific questions to the EMA – is one that has developed over time. The procedural rules relating to workers' compensation claims provide only general guidance regarding any procedures that may be used. Florida Administrative Code Rule 69L-30.005(3) provides: "When [EMA] services are needed in a proceeding before a [JCC], the [JCC] shall: (a) Select an [EMA] from the Department's list of certified [EMAs]; and (b) Make the necessary arrangements for the [EMA] to provide the [EMA] services." Florida Administrative Code Rule 69L-30.007(2) provides:

> When the [JCC] selects an [EMA], the [EMA] shall complete and submit a written report to the [JCC] within 15-calendar days following receipt of all medical records and examination of the injured employee. The medical records, which may be submitted to an [EMA] shall be within the discretion of the [JCC].

Neither the plain language of section 440.13(9)(c) nor the rules subsequently promulgated offer guidance regarding the question presented in this case: In assessing the role of the EMA, how broadly do we apply the presumption of correctness? Because the statute is ambiguous as to the scope of the presumption of correctness of EMA opinions, we look to legislative intent for guidance. See Russell v. Orange Cty. Pub. Sch. Transp., 36 So. 3d 743, 745 (Fla. 1st DCA 2010) (restating that when a statute is ambiguous or unclear on its face, courts must examine legislative intent) (citing Murray v. Mariner Health, 994 So. 2d 1051 (Fla. 2008)).

5

The JCC's comments, at the hearing and in his order, regarding the EMA's role are based on language from cases emanating from this Court: "It is apparent that the legislature's intent was to create a mechanism by which an independent medical expert would offer assistance to the [JCC] when he or she is faced with conflicting medical evidence from the parties' experts." Broward Children's Ctr., Inc. v. Hall, 859 So. 2d 623, 626 (Fla. 1st DCA 2003).

Certainly, the EMA is charged with addressing the questions posed by the JCC which are framed by the disagreements identified by the parties and the JCC. We are faced with the issues, however, of what happens if the EMA, after examining the claimant, rejects all of the previous assessments and raises questions and renders opinions that neither party considered and whether those opinions are admissible.

Given that the evidence code in sections 90.401 and 90.402, Florida Statutes (2013), generally provides that all relevant evidence, that is, evidence tending to prove or disprove material facts, is admissible, it follows that all of the opinions of an EMA are indeed admissible. It is in this vein that we determined in Dawson v. Clerk of Circuit Court – Hillsborough County, 991 So. 2d 407, 410-11 (Fla. 1st DCA 2008), that a physician authorized to treat only the claimant's wrist was nonetheless an "authorized treating physician" whose testimony concerning the claimant's shoulder was admissible under section 440.13(5)(e), Florida Statutes (2004), which provides that "[n]o medical opinion other than the opinion of a[n EMA], and

6

independent medical examiner, or an authorized treating provider is admissible in proceedings before the [JCCs]". Whether the testimony was sufficient to create a disagreement between health care providers was another matter – one to be determined by the JCC based on the weight and credibility afforded the opinion by the JCC. Because an EMA is one of the three specifically enumerated medical experts whose opinions are admissible, the logic in Dawson supports admissibility of all of the EMA's opinions.

We have addressed the circumstance whereby the EMA had no opinion on the question put to him by the JCC. In Fitzgerald v. Osceola County School Board, 974 So. 2d 1161, 1163 (Fla. 1st DCA 2008), "the EMA offered opinions relevant [to the issues at hand], but . . . ultimately he was inconclusive about both issues." Nevertheless, we resolved that simply because "Dr. Haim did not offer a definitive opinion does not mean the JCC could not have used the opinions Dr. Haim did formulate in resolving this case." Id. at 1163. In resolution of this dilemma, we explained:

> Dr. Haim's testimony can certainly be read here as raising doubts on aspects of the testimony of both IMEs. Accordingly, this testimony established a metric by which the JCC might measure the credibility and weight of all the other evidence presented, even though Dr. Haim was not conclusive on the ultimate issues in this case. We reject claimant's argument that she is entitled to judgment as a matter of law, and remand this matter in order to allow the JCC to conduct the analysis we have suggested.

7

Id. at 1164. Thus, the EMA's opinion – or non-opinion – was not presumptive; rather, it was deemed a part of the overall picture from which the JCC could draw conclusions. We set forth that "[a]lthough our construction of this statute imputes 'nearly conclusive effect' to the EMA's opinion, we have made equally clear the proposition that the EMA's opinion is, at bottom, a source of 'assistance' to the JCC." Id. (citations omitted). By analogy, those opinions voiced by an EMA which "exceed the scope" of the perceived disagreement would be admissible – but not presumptively correct. Therefore, the opinions intended to carry the presumption of correctness are only those that address already identified disagreements in medical opinions; all other medical opinions expressed by the EMA carry the same weight as that of an independent medical examiner or an authorized treating physician.

The Legislature has made it clear that cases are to be decided on their merits. See § 440.015, Fla. Stat. (2013) ("It is the specific intent of the Legislature that workers' compensation cases shall be decided on their merits."). Ignoring a medical opinion that is relevant to an issue before the JCC is not in keeping with that explicitly-stated legislative intent. Granted, there could be procedural problems; for example, parties may have to seek continuances to address new issues. This Court has recognized that all cases cannot at all times be completed in the shortest timeframe. See Hall, 859 So. 2d at 627-28 (acknowledging that working out the complicated EMA process may cause delay in the resolution of the case).

Based on the forgoing, we conclude the JCC abused his discretion in excluding Dr. Vega's relevant opinions regarding apportionment. We remand this matter to the JCC for application of the foregoing analysis and to assign the EMA's opinions the appropriate weight. On remand, the parties should be afforded the opportunity to reopen the medical evidence to address the apportionment issue.

AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with this opinion.

SWANSON and WINOKUR, JJ., CONCUR.