IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

STATE OF FLORIDA
DEPARTMENT OF
CORRECTIONS, NORTHWEST
FLORIDA RECEPTION
CENTER ANNEX/DIVISION
OF RISK MANAGEMENT,

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D15-5259

        Appellants,

v.

ANDREW JUNOD,

        Appellee.

_____/

Opinion filed April 13, 2017.

An appeal from an order of the Judge of Compensation Claims.
Laura Roesch, Judge.

Date of accident: April 19, 2010.

Colleen Cleary Ortiz of Colleen Cleary Ortiz, P.A., Pensacola, for Appellants.

Kimberly A. Hill of Kimberly A. Hill, P.L., Fort Lauderdale, for Appellee.


KELSEY, J.

        The Employer/Carrier appeals a final order of the Judge of Compensation

Claims holding that Claimant is entitled to benefits under the heart-lung statute,

section 112.18 of the Florida Statutes. We reverse.

## Claimant's Employment and Heart Attack.

After applying for a job as a correctional officer trainee, Claimant completed a pre-employment medical history questionnaire, and underwent a pre-employment physical at a local walk-in clinic in December of 2008.[1] On the questionnaire, he denied having ever been diagnosed with vascular disorders, high blood pressure, heart disease, heart murmur, or obesity. He was 5 feet, 8 inches tall and weighed 210 pounds. He disclosed that he had a family history of heart disease or heart attack. He had a normal electrocardiogram. The lab report revealed elevated glucose, but no other abnormalities among the factors tested. His blood labs did not include a lipid panel, so the pre-employment physical included no information about cholesterol levels. There was also no indication of his blood pressure. The examining physician nevertheless checked boxes indicating that his examination did not reveal evidence of tuberculosis, heart disease, or hypertension.

Claimant accepted a position as a correctional officer *trainee* beginning January 9, 2009. It was undisputed below that trainees are not correctional officers. Trainees do not engage in "supervision, protection, care, custody, and control, or

---

[1] Before correctional officers were added to the heart-lung statute in 2002, the law required firefighters and law enforcement officers to successfully pass a physical examination upon entering service, before being entitled to benefits under the statute. § 112.18(1)(a), Fla. Stat. (2001). In 2007, the pre-employment physical requirement was extended to cover correctional officers and correctional probation officers under § 943.13(6).

investigation, of inmates within a correctional institution." § 943.10(2), Fla. Stat. (2009) (defining correctional officers). After his initial hire date in January of 2009, Claimant participated in a training program based away from the correctional facility compound. During training, he injured his back and was unable to complete the training program, in an incident that the E/C accepted as compensable. His employer gave him light-duty work reading mail in the mail room for about four months. When he was deemed fully recovered from the back injury, he returned to the training program and completed it successfully, becoming a certified correctional officer on January 6, 2010.

Just over three months after becoming certified and beginning work as a correctional officer, Claimant suffered a heart attack while asleep at home. He notified his employer of the heart attack, and returned to work within a couple of weeks. A captain asked Claimant if the heart attack was work-related, and Claimant said it was not. He continued to work at that correctional facility until December of 2011, when he left to take another job. He did not assert a claim for benefits arising out of the heart attack before leaving this job, nor within the year after he left and worked elsewhere.[2] He was re-hired at the correctional facility in December of 2012.

---

[2] Under an amendment to the statute enacted in 2010, the presumption does not apply if a claim for benefits is not made "prior to or within 180 days after leaving the employment of the employing agency." § 112.18(1)(b)4., Fla. Stat. (2010). This Court in *Scherer v. Volusia Cty. Dep't of Corr.*, 171 So. 3d 135, 139-40 (Fla. 1st DCA 2015), by a 2-1 vote, construed this provision as not applying to claims arising

Claimant first made a claim for benefits arising out of his 2010 heart attack in December of 2014—four years and eight months after the heart attack. He asserted that he did not know until November of 2014 that his heart attack might be covered under the heart-lung statute. He argued that the statute of limitations did not begin to run until November of 2014 when he claims he first became aware of the heart-lung statute. The JCC accepted this argument and found the claim to be timely—a finding that we do not reach. We conclude that even if the claim was timely, the claim should have been denied because the E/C successfully rebutted the presumption of compensability under the heart-lung statute and there was no competent, substantial evidence of occupational causation.

Claimant's First Report form and his first Petition for Benefits did not rely on any sudden accident or unusual exertion as causing his heart attack. Rather, Claimant asserted in both documents that he "*developed* disabling arterial and cardiovascular hypertension and or heart disease *over course of career as a certified corrections officer* which became disabling on or about 4/19/2010 [the date of his heart attack]." (Emphasis added.)[3] The E/C denied the claim in its entirety on grounds of expiration

---

before July 1, 2010. Because we resolve this appeal on other grounds, we do not reach this issue.

[3] In light of Claimant's own concessions in the report form and PFB that he had worked in a qualifying occupation for only about three months before having a heart attack while sleeping at home, we have examined the employment tenures involved in our previous heart-lung opinions, and in records on appeal for cases dating back

of the statute of limitations, untimely notice, failure to meet the statutory presumption, and rebuttal of the statutory presumption.

### Independent Medical Examiners (IMEs).

Claimant's IME, Dr. Borzak, reviewed Claimant's medical records without examining Claimant. Dr. Borzak acknowledged Claimant's non-occupational risk factors, and concluded that he was not able to determine the cause of Claimant's heart attack.

The E/C's IME, Dr. Pedone, reviewed Claimant's medical records and examined Claimant. Dr. Pedone concluded within a reasonable degree of medical certainty that Claimant developed atherosclerosis over a period of years prior to his employment as a correctional officer, and that the atherosclerosis in turn was caused by Claimant's multiple risk factors unrelated to his employment. These risk factors included a history of heavy smoking—between two and three-and-a-half packs a day

---

as far as we have retained records (2006). We have found no cases applying the heart-lung presumption that involved an employment tenure of less than 10 years, and cases involving careers of up to 33 years. *See Fuller v. Okaloosa Corr. Inst.*, 22 So. 3d 803, 804-05 (Fla. 1st DCA 2009) (10 years); *City of Jacksonville Fire & Rescue Dep't v. Battle*, 148 So. 3d 795, 796 (Fla. 1st DCA 2014) (33 years). Nevertheless, section 112.18 on its face does not impose an express tenure requirement. Claimant himself refused to sign the report form that asserted he "developed" disabling conditions "over course of career as a certified corrections officer." Above the signature block on the report form is the caution that "Any person who, knowingly and with intent to injure, defraud, or deceive . . . files a statement of claim containing any false or misleading information commits insurance fraud . . . ." The signature line bears the words "refused to sign."

for 20 years, ending ten years before he took the trainee job; male gender; over age 45 (age 55); family history of early-onset heart disease as evidenced by his mother's cardiac bypass surgery at age 55 and subsequent heart transplant and death; obesity; dyslipidemia; increased abdominal girth; and elevated glucose levels. The E/C's IME concluded within a reasonable degree of medical certainty that these factors, and not Claimant's employment, caused Claimant's heart attack.

**Expert Medical Advisor (EMA).**

Although there was no conflict between the IME opinions because one physician could not determine a cause and the other opined that the cause was non-occupational, the JCC made no findings on the IME opinions, and the parties agreed to the appointment of an expert medical advisor (EMA). The JCC appointed Dr. Leonard Pianko as an EMA to evaluate Claimant and advise the JCC. Dr. Pianko recognized Claimant had several coronary risk factors traditionally associated with coronary artery disease, but concluded that the predominant etiology of the heart disease was work-related. By the time Claimant saw Dr. Pianko on August 18, 2015, it had been five years and four months since Claimant's heart attack. Dr. Pianko admitted that when he examined Claimant and prepared the EMA report, he did not know that Claimant had worked as a correctional officer for only about three months before the heart attack. Instead, he assumed Claimant had worked as a correctional officer for "several years" or about "2 years" after passing his December 2008 pre-

6

employment physical. Given that mistaken factual foundation, the E/C objected to the EMA's opinion and moved to strike it.

The EMA also opined that Claimant's heart attack was work-related based on articles by Dr. Stefanos Kales, describing epidemiological studies covering only police officers and firefighters. These articles are not in the record, but the EMA described them as showing "a markedly increased incidence of coronary artery disease" among police and firefighters compared to the general population. The EMA acknowledged that the Kales articles did not cover correctional officers, and he knew of no studies that did pertain to correctional officers. He nevertheless considered the Kales articles analogous based on his own experience, primarily in Dade County. There was no evidence of studies or Dr. Pianko's experience involving correctional officers with work tenures of only a few months. Dr. Pianko acknowledged that Claimant had other risk factors, but expressly based his opinion of occupational causation directly on the Kales articles.

At the EMA's deposition and at trial, the E/C objected to the EMA's opinion on the grounds that the EMA improperly relied on the Kales articles and failed to satisfy the requirements of section 90.702 of Florida's Evidence Code and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).[4] Claimant did not

---

[4] We are aware of the Florida Supreme Court's decision declining to adopt *Daubert* "to the extent it is procedural." *In re: Amends. to the Fla. Evid. Code*, 42 Fla. L. Weekly S179 (No. SC16-181) (Fla. Feb. 16, 2017). *See also Anderson v. State*, __

request a pre-trial ruling on the *Daubert* objection, and did not request the assignment of an alternate EMA.

## The Heart-Lung Statute.

Florida's heart-lung statute was enacted in 1965, covering firemen only. § 112.18, Fla. Stat. (1965) (codifying Ch. 65-480, Laws of Fla. (Senate Bill 149)). An earlier Florida Supreme Court decision held that medical incidents such as heart attacks could be compensable events even without the occurrence of a literal "accident," if they resulted from unusual work-related exertion. *Victor Wine & Liquor, Inc. v. Beasley*, 141 So. 2d 581, 588-89 (Fla. 1961) (On Rehearing Granted). Subsequent changes in the law broadened applicability of the statutory presumption of compensability. *See* Ch. 73-125, § 1, at 196, Laws of Fla. (abolishing previous requirement that the presumption operated only in regard to pension and retirement benefits); *Caldwell v. Div. of Ret.*, 372 So. 2d 438, 440-41 (Fla. 1979) (broadening compensability to encompass firemen's disabilities accruing over a period of time

---

Fla. L. Weekly ___ (No. SC12-1252, 14-881) (Fla. Mar. 9, 2017) (describing *Daubert* as "more lenient" than *Frye*). We reaffirm that *Daubert* continues to apply in workers compensation proceedings as we held in *Giaimo v. Fla. Autosport, Inc.*, 154 So. 3d 385, 388 (Fla. 1st DCA 2014). *See also Baricko v. Barnett Transp., Inc.*, 42 Fla. L. Weekly D174 (Fla. 1st DCA Jan. 17, 2017) (Wetherell, J., concurring) (noting that supreme court's failure to adopt the procedural aspects of *Daubert* "will have no impact whatsoever on the applicability of the *Daubert* test in workers' compensation proceedings"). On the facts of this case, as we explain herein, we conclude that the result here would be the same under either *Daubert* or *Frye*; but that comparative analysis should not be construed as suggesting any departure from *Giaimo*.

as hazards are "constantly faced" over the course of a career); Ch. 2002-236, § 3, at 1720, Laws of Fla. (adding law enforcement officers and correctional officers as covered occupations); Ch. 2010-175, § 2, at 2184, Laws of Fla. (amending statute to add correctional probation officers, impose time limits on claims, and eliminate the presumption of occupational causation for claimants who have materially departed from a prescribed medical course of treatment resulting in aggravation of a covered condition).

The first paragraph of the 2009 statute in effect when Claimant had his heart attack was otherwise largely unchanged from the original law, providing as follows:

> Any condition or impairment of health of any Florida state, municipal, county, port authority, special tax district, or fire control district firefighter or any law enforcement officer or correctional officer as defined in s. 943.10(1), (2), or (3) caused by tuberculosis, heart disease, or hypertension resulting in total or partial disability or death shall be presumed to have been accidental and to have been suffered in the line of duty unless the contrary be shown by competent evidence. However, any such firefighter or law enforcement officer shall have successfully passed a physical examination upon entering into any such service as a firefighter or law enforcement officer, which examination failed to reveal any evidence of any such condition. Such presumption shall not apply to benefits payable under or granted in a policy of life insurance or disability insurance, unless the insurer and insured have negotiated for such additional benefits to be included in the policy contract.

§ 112.18(1), Fla. Stat. (2009).

9

## **Rebutting the Statutory Presumption.**

The heart-lung statute provides that the E/C can rebut the statutory presumption with competent evidence of non-occupational causation. *Id.* ("unless the contrary be shown by competent evidence"). The Florida Supreme Court in *Caldwell* described the presumption created in section 112.18 as an expression of social policy, and thus held that it affects the burden of proof. 372 So. 2d at 440. *Caldwell* held that the statutory presumption can be rebutted with medical evidence that "some other specific hazard or non-occupational factor was the cause of the disease." *Id.* at 441.

We have held that, if the claimant relies solely on the statutory presumption, the E/C can rebut that presumption with competent evidence; but if the claimant adduces competent evidence of occupational causation in addition to the presumption, the E/C must have clear and convincing evidence to rebut the presumption. *Punsky v. Clay Cty. Sheriff's Office*, 18 So. 3d 577, 584 (Fla. 1st DCA) (On Rehearing En Banc) (certifying question of great public importance as to the E/C's proper burden of proof), *review denied*, 22 So. 3d 539 (Fla. 2009). The E/C's rebuttal evidence must be medical evidence established to a reasonable degree of medical certainty. *Fuller v. Okaloosa Corr. Inst.*, 22 So. 3d 803, 806 (Fla. 1st DCA 2009). If the JCC's ultimate conclusion is not supported by competent, substantial evidence, we must reverse. *Punsky*, 18 So. 3d at 584.

**The E/C Successfully Rebutted the Presumption.**

Although the E/C raises several issues on appeal including statute of limitations, which we do not reach, we reverse because the E/C successfully rebutted the statutory presumption with competent medical evidence; and the JCC's conclusion of occupational causation was not supported by competent, substantial evidence. *See id.* Dr. Borzak, Claimant's IME, performed a records review only, with no personal interaction with Claimant. He could provide no opinion regarding causation. In contrast, the E/C's IME, Dr. Pedone, examined Claimant and his records, and testified with the requisite degree of medical certainty that Claimant suffered from multiple pre-existing risk factors that, alone or in combination, caused Claimant's atherosclerosis and resulting myocardial infarction. He excluded any work-related causes.

Although there was no conflict between the two IME opinions, because Claimant's IME physician had no opinion regarding causation, the JCC nevertheless appointed Dr. Pianko as EMA. Dr. Pianko acknowledged Claimant's coronary risk factors traditionally associated with coronary artery disease, but concluded that the predominant cause of Claimant's heart disease was work-related. An EMA opinion is presumptively correct to the extent it addresses disagreements in the opinions of healthcare providers. § 440.13(9)(c), Fla. Stat. ("The opinion of the expert medical advisor is presumed to be correct unless there is clear and convincing evidence to

11

the contrary as determined by the judge of compensation claims.").[5]  However, an EMA opinion also must comply with the Florida Evidence Code, including *Daubert. See U.S. Sugar Corp. v. Henson,* 823 So. 2d 104, 107 (Fla. 2002) ("First, the Florida Evidence Code applies in workers' compensation proceedings.") (citing *Alford v. G. Pierce Woods Mem'l Hosp.*, 621 So. 2d 1380, 1382 (Fla. 1st DCA 1993)); *Giaimo,* 154 So. 3d at 387. Under the Evidence Code as amended in 2013 to codify *Daubert*, expert testimony must be "based on sufficient facts or data"; be "the product of reliable principles and methods"; and be applied "reliably to the facts of the case." § 90.702, Fla. Stat. We conclude that the E/C's *Daubert* objection to Dr. Pianko's opinion was well-founded, because the opinion (1) lacked an accurate factual basis, and (2) relied on improper bolstering. It therefore provided no legally sufficient evidentiary basis for the JCC's ruling in favor of Claimant, and required judgment for the E/C. *Punsky*, 18 So. 3d at 584.

---

[5] An EMA opinion is admissible as provided in § 440.25(4)(d), Fla. Stat., *when* there is a conflict in the medical evidence. However, an EMA opinion is *not* presumptively correct under § 440.13(9)(c) to the extent that it exceeds the scope of any identified disagreement between other authorized medical opinions. *Lowe's Home Centers, Inc. v. Beekman*, 187 So. 3d 318, 322 (Fla. 1st DCA 2016) ("Therefore, the opinions intended to carry the presumption of correctness are *only* those that address already identified disagreements in medical opinions; all other medical opinions expressed by the EMA carry the same weight as that of an independent medical examiner or an authorized treating physician."). In that situation, the EMA opinion is no more than a potential "source of assistance to the JCC." *Id.* (quoting *Fitzgerald v. Osceola Cty. Sch. Bd.*, 974 So. 2d 1161, 1164 (Fla. 1st DCA 2008)).

**(1) <u>Inaccurate Factual Foundation.</u>** We have held that an expert must establish accurate essential foundation facts in support of the expert's opinion. *Lang Pools v. McIntosh*, 415 So. 2d 842, 843 (Fla. 1st DCA 1982) (rejecting expert's opinion based on premise that claimant suffered a fall, when claimant's own testimony was to the contrary, rendering the expert's factual foundation erroneous); *see also Arkin Constr. Co. v. Simpkins*, 99 So. 2d 557, 561-62 (Fla. 1957) ("It is elementary that the conclusion or opinion of an expert witness based on facts or inferences not supported by the evidence in a cause has no evidential value."). Dr. Pianko admitted that when he examined Claimant in August of 2015, he was not aware that Claimant had worked as a correctional officer for only about three months before suffering the heart attack at issue. Rather, the doctor had assumed that Claimant had worked as a correctional officer for several years or at least two years before the heart attack. He related that Claimant had talked to him about the stresses of working as a correctional officer.

By the time of this examination and discussion, however, Claimant was describing the experiences of nearly five years in that job. Dr. Pianko admitted that it was important to his analysis that he thought Claimant had worked under the real and anticipatory stress of the correctional officer job for several years prior to his heart attack, and that he was mistaken. This was a significant factual error that went to the very heart of Dr. Pianko's causation opinion, rendering that opinion

13

incompetent. *See Daubert*, 509 U.S. at 591 (requiring accurate connection between expert testimony and the actual facts of the case to satisfy requirement of relevance); *Shartz v. Miulli*, 127 So. 3d 613, 620-21 (Fla. 2d DCA 2013) (rejecting as legally insufficient an expert's causation testimony that relied on conjecture to extrapolate several years back in time to determine the decedent's then-existing medical condition). Dr. Pianko's opinion, materially lacking an accurate factual foundation, could not support the JCC's ruling. *Punsky*, 18 So. 3d at 584.

(2) **Improper Bolstering.** We also find that Dr. Pianko improperly bolstered his opinion. Experts are prohibited from bolstering their opinions by reference to the opinions of non-testifying experts or opinions expressed in treatises authored by others. § 90.706, Fla. Stat.; *Linn v. Fossum*, 946 So. 2d 1032, 1039 (Fla. 2006). These principles apply in workers' compensation cases under either *Daubert* or *Frye*. *Henson*, 823 So. 2d at 109 (adopting for application in workers' compensation cases the requirements of *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), that expert testimony must be based on precepts generally accepted in the scientific community); *Booker v. Sumter Cty. Sheriff's Office,* 166 So. 3d 189, 194 (Fla. 1st DCA 2015) (rejecting, after Legislature's adoption of *Daubert*, pure opinion testimony based only on clinical experience and training, and requiring expert opinions to be based on scientific knowledge to assure relevance and reliability). In

14

this case, Dr. Pianko's testimony was not competent evidence, because he improperly bolstered his opinion.

Dr. Pianko as EMA admitted that Claimant had several risk factors for heart disease, including male gender, family history of heart disease, and personal history of heavy cigarette smoking. However, he found these factors less significant than factors addressed in articles written by another expert, dealing with firefighters and law enforcement officers. Dr. Pianko's written EMA report stated as follows with respect to his reliance on such articles (emphasis added):

> I have reviewed several articles that have looked at police officers and firefighters written by Kales, which on an epidemiological basis shows a markedly increased incidence of coronary artery disease in the general population. [Claimant's] development of heart attack 2 years later appeared to be work related *based on the epidemiological data of [K]ales*.

At his deposition, which was admitted into evidence for purposes of the final evidentiary hearing, Dr. Pianko admitted that the Kales articles did not deal with correctional officers. He nevertheless testified that in his opinion, based in part on conversations he has had with other unspecified experts, the articles involving police officers in particular *should* relate to correctional officers. When asked specifically whether this opinion was supported by any medical treatises or journals, he said he was relying on his own experience, particularly in Dade County.

Dr. Pianko was not entitled to bolster his opinion by reference to other experts' opinions or publications. The seminal case on improper bolstering is *Linn v. Fossum*,

15

which prohibits experts from bolstering their opinions by reference to other experts or treatises. 946 So. 2d at 1039. We have applied *Linn* to prohibit experts from using published materials or hearsay consultations to bolster their opinions. *Duss v. Garcia*, 80 So. 3d 358, 364 (Fla. 1st DCA 2012); *Hargrove v. Howell,* 884 So. 2d 960, 962 (Fla. 1st DCA 2004); *see also Liberatore v. Kaufman*, 835 So. 2d 404, 407 (Fla. 4th DCA 2003) (collecting cases prohibiting bolstering of expert opinions on direct examination). This result flows from section 90.706 of the Florida Evidence Code, which prohibits the use of authoritative literature except on cross-examination. The EMA's reliance on the Kales articles as well as other unspecified publications and discussions was improper, and rendered the EMA opinion incompetent and not a valid evidentiary basis for the JCC's finding in favor of Claimant. *Punsky*, 18 So. 3d at 584.

## Conclusion.

Because the E/C successfully rebutted the statutory presumption of section 112.18, and the EMA's opinion was not competent, substantial evidence of occupational causation, Claimant was not entitled to benefits under the heart-lung statute.

REVERSED and REMANDED for entry of judgment in favor of the E/C.

ROWE and JAY, JJ., CONCUR.

16