# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-4802

_____

CROWN DIVERSIFIED INDUSTRIES
CORP. and LIBERTY MUTUAL
INSURANCE COMPANY,

    Appellants,

    v.

EILEEN PRENDIVILLE,

    Appellee.

_____

On appeal from an order of the Judge of Compensation Claims.
Neal P. Pitts, Judge.

Dates of Accidents: April 26, 2016; June 27, 2016.

December 10, 2018

PER CURIAM.

In this workers' compensation case, the Employer/Carrier (E/C) appeal the order of the Judge of Compensation Claims awarding Eileen Prendiville benefits for her alleged injury caused by exposure to mold in the workplace. We agree with the E/C's first argument and reverse because the JCC admitted the opinion testimony of Dr. Powers, Prendiville's independent medical examiner, which was not competent evidence.

*Background*

Prendiville worked for several years as an administrator in her employer's resort complex in Clermont. In 2015, she developed symptoms of sinus infection, cough, voice loss (dysphonia), bronchitis, and swelling of the legs (lymphedema). Prendiville had never experienced these symptoms before 2015. Due to similar complaints from a co-worker, an environmental study was performed in the workplace in August 2015. The study revealed no elevated microbial spores in the air of the areas tested, but the surface swabs indicated spores of several different molds, including Curvalaria. Prendiville subsequently testified that she smelled and saw what appeared to be mold in her personal office and other areas of the workplace; she also took photographs.

In 2016, Prendiville underwent allergy testing in which she reacted positively to various allergens including selected weeds, trees, grasses, animals, and molds. The molds previously identified in the 2015 environmental study were among the numerous molds to which Prendiville had an allergic reaction. She later testified that she was led to believe that mold exposure at work was the cause of her medical problems because her symptoms were worse at work and better when she was away from work. In December 2016, Prendiville filed a petition for benefits. The E/C denied compensability of any workplace injury and the matter proceeded to hearing before a JCC.

In the final order, the JCC found that Prendiville satisfied her burden of proving mold exposure at work as the major contributing cause of her injury via the testimony of Dr. Powers. Dr. Powers testified that he is board certified in family practice. He admitted that he does not generally treat patients who have been exposed to mold/fungi and that he had never previously treated a patient like Prendiville whose condition is "more extreme." He holds no specialized licensing in mold exposure, infectious disease, toxicology, or any related field, and he never claimed to be an expert on mold-related injuries or diseases. Although Dr. Powers examined Prendiville in July 2016, he did not complete his report until November 2016 because it "required a lot of research" and he had never previously researched mold exposure. As a part of his research, Dr. Powers consulted with Dr. Uppal, an infectious

disease doctor in New York who specializes in mold exposure, and reviewed the medical records of Prendiville's co-worker who had similar symptoms.

Ultimately, Dr. Powers opined that Prendiville was exposed to mold in the workplace and that this exposure was the major contributing cause of Prendiville's symptoms. During this testimony, the E/C raised multiple objections along with a general standing objection "to any of the doctor's opinions based on improper predicate and improper foundation, [and] lack of evidence of actual mold exposure." At the conclusion of cross-examination, the E/C placed a general objection on the record challenging the doctor's expertise "under . . . section 90.702." The E/C also objected to the doctor's reliance on the co-worker's medical records as hearsay.

Approximately a month before the final hearing, the E/C unsuccessfully moved to strike Dr. Powers's opinion evidence as based on a lack of competent substantial evidence. The E/C asserted that there was no evidence of any kind of exposure, resulting in a "fallacy leap" in the logic of the doctor's opinion, and that the co-worker's medical records were irrelevant.

*Standard of Review*

A JCC's decision to admit evidence is reviewed for abuse of discretion. *See King v. Auto Supply of Jupiter, Inc.*, 917 So. 2d 1015, 1017 (Fla. 1st DCA 2006) (holding that a JCC's admission of evidence is reviewed for abuse of discretion). In addition, the Florida Evidence Code applies to workers' compensation proceedings. *See Alford v. G. Pierce Woods Mem'l Hosp.*, 621 So. 2d 1380, 1382 (Fla. 1st DCA 1993).

*Discussion*

On appeal, the E/C raise several challenges to the JCC's admission of Dr. Powers's opinion testimony based primarily on the application of the rules of expert testimony under the Florida Evidence Code. We conclude that the JCC abused his discretion by admitting the expert testimony over the E/C's objections because

3

it was based on improper bolstering and lacked a sufficient factual foundation.

The problems with Dr. Powers's testimony stem from the evidentiary requirements set forth in sections 90.704 and 440.09(1). Section 440.02(1), Florida Statutes (2016), provides, in pertinent part, that an injury or disease caused by exposure to a toxic substance, such as mold, "is not an injury by accident arising out of employment unless there is clear and convincing evidence establishing that exposure to the specific substance involved, at the levels to which the employee was exposed, can cause the injury or disease sustained by the employee." Section 440.09(1) requires that "[t]he injury, its occupational cause, and any resulting manifestations or disability must be established to a reasonable degree of medical certainty, based on objective relevant medical findings, and the accidental compensable injury must be the major contributing cause of any resulting injuries." Dr. Powers testimony did not supply a sufficient evidentiary basis for concluding that Prendiville was exposed to mold in her workplace, or that her mold exposure at work was the major contributing cause of her symptoms.

The first problem with Dr. Powers's expert opinion was that it was improperly bolstered by the professional opinions and reports of others. In *Linn v. Fossum*, 946 So. 2d 1032, 1039-40 (Fla. 2006), the Florida Supreme Court explained that improper bolstering occurs when an expert is used as a conduit for otherwise inadmissible evidence, and the expert reaches an opinion by relying on the opinions and publications of other experts. *See also State Dep't of Corr. v. Junod*, 217 So. 3d 200, 207 (Fla. 1st DCA 2017) (holding an expert medical advisor's reference to other experts' opinions and publications to have rendered his occupational causation opinion incompetent). Here, Dr. Powers gave testimony describing several published articles that he found on the internet. These articles were attached to his deposition transcript. He "greatly" relied on this literature in reaching his opinion on workplace causation in this case, and the JCC then identified articles appended to his deposition as evidence supporting the final compensation order below.

4

Dr. Powers further bolstered his testimony with the opinions of New York-based infectious disease doctor, Dr. Uppal, who specializes in mold infections. Dr. Powers did not reach his opinion independently, but admitted (1) that he had never had a patient like Prendiville; (2) that he did not reach an opinion until after his consultation with Dr. Uppal, who was currently treating a similar patient; and (3) that he adopted Dr. Uppal's recommendations that Prendiville needed to see an infectious disease physician, adopting her specific recommendations for particular blood tests and recommending that Dr. Uppal be authorized to take over Prendiville's care. This was not a situation where Dr. Powers relied on "his own independent opinion." *See Gutierrez v. Vargas*, 239 So. 3d 615, 627 (Fla. 2018). But instead, Dr. Powers gave voice to Dr. Uppal's opinion in the absence of the availability of cross-examination.

Dr. Powers also relied on the inadmissible medical records of Prendiville's co-worker to bolster his opinion, which he identified as "facts and data" forming the basis of his opinion. Although Dr. Powers did not have a "face-to-face" consultation with the co-worker's physicians, it is clear that he treated her medical records as both evidence and confirmation of his occupational causation opinion regarding Prendiville.

The second problem with Dr. Powers's testimony is that it lacked a sufficient factual foundation to establish occupational causation. Dr. Powers opined that Prendiville became infected from "whatever molds or substances were in that building" and suggested that the most likely substance was Curvularia mold. In reaching this opinion, Dr. Powers relied heavily on the co-worker's medical records which showed that she had been infected with Curvularia mold. But these records are not clearly applicable to Prendiville's medical condition, whereas section 440.02(1) restricts conclusions that exposure arose out of employment unless there is clear and convincing evidence establishing that there was "exposure to the specific substance involved at [harm-causing] levels." Prendiville's apparent infection from a specific mold has not been demonstrated by diagnostic testing despite the fact that a blood test would provide objective proof. Even if we were to assume proper "facts or data" support Dr. Powers's opinion that Prendiville was exposed to Curvularia mold at work, Prendiville

did not establish "that the facts or data are of a type reasonably relied upon by experts in the subject" to conclude that she actually contracted any disease or injury from that exposure. Indeed, Dr. Powers appeared to concede that there was currently insufficient facts to determine which mold (of the many potential molds that may be found anywhere in Florida) caused Prendiville's symptoms.

For these reasons, we find that the JCC abused his discretion when he admitted Dr. Powers's occupational causation opinion testimony into evidence. We, therefore, reverse the order below.

REVERSED and REMANDED.

ROBERTS, WETHERELL, and OSTERHAUS, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Edward C. Duncan III of Law Offices of Amy L. Warpinski, Fort Myers, for Appellants.

Wayne Johnson of DeCiccio & Johnson, Maitland, for Appellee.