BENTON, J.
In this workers’ compensation case, a correctional officer appeals an order of a judge of compensation claims ruling him ineligible under section 112.18(l)(b)4., Florida Statutes (2013), for the presumption of occupational causation set out in section , 112.18(l)(a), Florida Statutes (2013), and denying the compensability of his heart condition for that reason. Persuaded section 112.18(1)(b)4. did not strip him of the presumption available to correctional officers regarding disabilities caused by heart disease resulting in “disablement” before July 1, 2010, we reverse and remand for further proceedings.
“Although heart disease is not ordinarily compensable as an occupational disease, the Florida Legislature ... enacted section 112.18(1) ..., which established] a statutory presumption that heart disease suffered by a fireman [or certain others including correctional officers], is connected with the exertions of his work....” Sledge v. City of Fort Lauderdale, 497 So.2d 1231, 1233 (Fla. 1st DCA 1986) (citation omitted). “Section 112.18, Florida Statutes (2009) — variously known as the ‘Firefighter’s Presumption,’ the ‘Heart and Lung Bill’ or the ‘Heart-Lung Statute,’ see 9 Patrick John McGinley, Fla. Prac. Workers’ Comp, with Forms § 11:6 (2012 ed.) — creates a rebuttable presumption of occupational causation for disabling heart disease (among other health conditions) suffered by correctional officers (among others) who meet certain prerequisites. The presumption is dispositive unless rebutted by medical evidence. See Fuller v. Okaloosa Corr. Inst., 22 So.3d 803, 806 (Fla. 1st DCA 2009).” Walters v. State, DOC/Div. of Risk Mgmt., 100 So.3d 1173, 1174 (Fla. 1st DCA 2012) (footnote omitted).
In the present case, after being diagnosed with cardiomyopathy, Brian Scherer stopped working as a correctional officer for Volusia County on October 27, 2009, *137 because of his heart condition. The Mayo Clinic in Jacksonville recommended that he be placed on a heart transplant list. In December of 2009, however, he had a defibrillator implanted, and he returned to work on April 27, 2010. But his condition deteriorated thereafter until he retired on January 27, 2012. In March of 2013, he had a heart transplant.
In June and September of 2013, he filed a total of five petitions for workers’ compensation benefits alleging a compensable heart condition under two dates of accident (disablement): October 29, 2009, and January 27, 2012. All petitions — each of which relied on section 112.18 — were consolidated. Volusia County defended, in' part, on grounds that the section 112.18 presumption was not available because appellant did not file any petition within 180 days of leaving employment. Without the presumption, appellant concedes, his claims fail.
This is not a statute of limitations case — no statute of limitations question has been raised on appeal — but the date on which heart disease caused appellant’s disability figures importantly in our analysis. By statute, “ ‘the disablement or death of an employee resulting from an occupational disease ... shall be treated as the happening of an injury by accident. ...’ Section 440.151(1), Florida Statutes (1969).” Hoppe v. City of Lakeland, 691 So.2d 585, 586-87 (Fla. 1st DCA 1997) (quoting Am. Beryllium Co. v. Stringer, 392 So.2d 1294, 1295-96 (Fla.1980)). “In occupational disease cases, ... it is the disability and not the disease which determines the compensability of a claim.” Id. at 587.
Section 112.18(l)(b), which became effective on January 1, 2011, see Chapter 2010-175, section 2, at 2184-85, 2216, Laws of Florida, reads as follows:
(b)l. For any workers’ compensation claim filed under this section and chapter 440 occurring on or after July 1, 2010, a ... correctional officer ... is presumed not to have incurred such disease in the line of duty ... if the ... officer:
a. Departed in a material fashion from the prescribed course of treatment ...; or
b. Was previously compensated pursuant to this section....
2. As used in this paragraph, “prescribed course of treatment” means....
3. If there is a dispute as to the appropriateness of the course of treatment prescribed....
4. A law enforcement officer, correctional officer, or correctional probation officer is not entitled to the presumption provided in this section unless a claim for benefits is made prior to or within 180 days after leaving the employment of the employing agency.
The Judge of Compensation Claims ruled that the July 1, 2010 cut-off date applies only to subparagraph (l)(b)l., and not to subparagraph (l)(b)4.
The Judge of Compensation Claims also ruled, as to both dates of accident, that appellant had not made a claim prior to or within 180 days after leaving his employment with the Volusia County Department of Corrections, and in the final compensation order deemed him ineligible for the section 112.18(l)(a) presumption on that basis:
8. Claimant argues the reference to claims “filed under this section and chapter 440 occurring on or after July 1, 2010” means the 2010 amendments only apply to workers’ compensation claims involving dates of accident/disablement on or after July 1, 2010. Does the sentence mean any petition for benefits, regardless of the date of accident, filed *138 on or after July 1, 2010, is subject to section 112.18(l)(b)? Or does it mean, as Claimant argues, that the amendment does not apply to dates of accident/disablement before July 1, 2010, regardless of when the petition for benefits is filed?
9. The Legislature certainly used a curious grammatical construction when it chose to follow the verb “filed” with the verb “occurring.” I conclude it is unnecessary to. construe the sentence containing the reference to July 1, 2010, to decide this case because it is in sub-paragraph 1. of paragraph (b). The language at issue in this case is in subpara-graph 4. of paragraph (b). Applying the canons of statutory interpretation known as the scope-of-subparts canon5 and the nearest-reasonable-referent canon,6 I conclude the reference to July 1, 2010, relates only to subparagraph 1., not to the 180-day time limitation in subpara-graph 4.
’ "Material within an indented subpart relates only to that subpart; material contained in unindented text relates to all the following or preceding indented subparts.” Scalia and Garner, Reading Law: The Interpretation of Legal Texts 156 (2012).
"When the syntax involves something other than a parallel series of nouns or verbs, a prepositive or postpositive modifier normally applies only to the nearest reasonable referent.” Scalia and Garner, Reading Law: The Interpretation of Legal Texts 152 (2012).
Claimant argued below, and argues on appeal, that the entirety of subsection (l)(b) applies only to workers’ compensation cases involving dates of disablement on or after July 1, 2010.
We agree. All subparagraphs (also referred to as sub-subsections) of paragraph (l)(b) should be read in pari materia, not only because of the structure of the text, but also because the subpara-graphs of paragraph (l)(b) were all enacted together, as part of the same amendment to section 112.18, and all took effect together on January 1, 2011. “ ‘[Statutes relating to the same subject matter should be read in pari materia, and such rule is particularly applicable where such statutes are enacted as part of the single act.’” G.G. v. Fla. Dep’t of Law Enforcement, 97 So.3d 268, 272 (Fla. 1st DCA 2012) (quoting McGraw v. R and R Inv., Ltd., 877 So.2d 886, 890 (Fla. 1st DCA 2004)). The scope-of-subparts canon notwithstanding, nothing in the text gives reason to believe that different effective dates were intended for different provisions — indented or otherwise — within paragraph (1)(b). No other or alternative date was stated for any other subparagraph of paragraph (1)(b), nor- does any logical or textual basis for assigning different dates to different operative provisions of this unitary enactment suggest itself.
The Judge of Compensation Claims also purported to rely on the nearest-reasonable-referent canon in construing a paragraph comprised of several subparagraphs, even though that canon has only to do with the effect to be given to “modifiers” within a single sentence. The canon holds simply that, whether coming before or after what is modified, modifiers (adjectives, adverbs, prepositional phrases, restrictive clauses) should be read as modifying the nearest noun, verb, or other sentence element to which they can reasonably be said to pertain. The canon calls for a commonsense interpretation of the way in which words are put together to form phrases, clauses, or sentences, and has little or nothing to do with how different paragraphs and sub-paragraphs should be understood in relation to one another.
In the alternative, the Judge of Compensation Claims ruled that the crucial date for purposes of the statute was not the date of accident or disablement but the date on which a worker filed a -claim for *139 workers’ compensation benefits. The final compensation order explains his reasoning:

Alternatively, if the date referenced] in section 112.18(1) (b)l. applies to section 112.18(1) (b)I., it pertains to all claims filed on or after July 1, 2010, regardless of the date of accident

10. If the first sentence of section 112.18(l)(b)l. does apply to section 112[.18](l)(b)4., I construe the sentence to mean the amended statute applies to all claims filed on or after July 1, 2010, regardless of the date of accident. As I see ⅜ there are two ways to give meaning to the sentence. One is to read it as saying the amended statute applies to all cases where the filing of a claim occurs on or after July 1, 2010. The other is to read it as saying, “For any workers’ compensation claim filed under this section and chapter 440 for accidents occurring on or after July 1, 2010.... ” Because the latter interpretation would require me to insert words into the statute that the Legislature did not use, I reject the latter interpretation and accept the former.
While the compound phrase “For any workers’ compensation claim filed under this section and chapter 440 occurring on or after July 1, 2010 .is not unambiguous, the learned judge’s construction has the effect of rendering the word “occurring” in subparagraph (l)(b)l. meaningless surplus.
 No part of a statute, not even a single word, should be ignored, read out of the text, or rendered meaningless, in construing the provision. “ ‘[T]he Legislature does not intend to enact useless provisions, and courts should avoid readings that would render a part of a statute meaningless.’” G.G., 97 So.3d at 273 (quoting State v. Goode, 830 So.2d 817, 824 (Fla. 2002)). “Basic to our examination of statutes, and an important aspect of our analysis here, is the ‘elementary principle of statutory construction that significance and effect must be given to every word, phrase, sentence, and part of the statute if possible, and words in a statute should not be construed as mere surplusage.’ Gulfstream Park Racing Ass’n v. Tampa Bay Downs, Inc., 948 So.2d 599, 606 (Fla.2006) (quoting Hechtman v. Nations Title Ins. of N.Y., 840 So.2d 993, 996 (Fla.2003)).” Sch. Bd. of Palm Beach Cnty. v. Survivors Charter Schools, Inc., 3 So.3d 1220, 1233 (Fla.2009).
In construing the statute, we must be at pains to avoid rendering the word “occurring” “totally redundant and without meaning because [it] would simply refer to the same [thing, i.e., filing] ... already clearly described in other language in the same statutory provision.” Gulfstream Park, 948 So.2d at 605. To interpret “occurring” as totally redundant or as meaningless would be “contrary to accepted rules of statutory construction.” Id. at 606. -The dissent’s contention that the only date stated anywhere in the paragraph at issue (notably, in the introductory portion thereof) does not pertain is even more problematic.
In deciding what meaning “occurring” was intended to convey, we naturally ask why the word “occurring” appears in the statute at all: If the Legislature had intended, as the Judge of Compensation Claims concluded it did, that the date of filing be determinative, it could simply have omitted the word “occurring.” In that way, the subparagraph which now begins “For any workers’ compensation claim filed under this section and chapter 440 occurring on or after July 1, 2010 .... ” would have begun “For any workers’ compensation claim filed under this section and chapter 440 on or after July 1, 2010.... ” It would have been a simple matter to excise “occurring”; and legisla *140 tive intent to make the date of filing determinative would have been clear. That the Legislature did not omit “occurring” suggests, therefore, that it did not intend to make the date of filing determinative.
If the date of filing the claim is not determinative, the date of disablement or the occurrence of an industrial injury must be determinative. See Bautista v. State, 863 So.2d 1180, 1185 (Fla.2003) (applying a “common-sense approach” to statutory interpretation in order to give effect to legislative intent). We glean this from use of the elliptical “occurring” itself. In legal parlance, claims arise, may remain viable or be extinguished, can be stated, pleaded or alleged, and may be filed, settled, compromised, abandoned, dismissed, prosecuted, defended, litigated, and adjudicated. Rarely, if ever, however, do claims “occur.” Industrial accidents and occupational diseases, on the other hand, do “occur” from time to time. As discussed ante, occupational diseases become “an injury by accident” (and thus “occur”) upon the date of disablement, partial or total, a date which falls on one side of July 1, 2010 or the other. Once an industrial injury occurs, moreover, the term “claim” refers, not only to a petition for benefits or other assertion of rights, but also to the vesting of rights arising under chapter 440 on account of the injury.*
Here, appellant alleged two different dates of accident, one before and one after July 1, 2010. As we construe the statute, he is entitled to the “heart lung” presumption as regards the first date of accident but not as regards the second. Because the presumption is rebuttable, see Caldwell v. Div. of Ret., Fla. Dep’t of Admin., 372 So.2d 438 (Fla.1979), the case should be remanded so the parties can put on evidence as to occupational causation.
Reversed and remanded.
WOLF, J., concurs; RAY, J., dissents with opinion.

A "claim” that must be adjusted in accordance with law arises by virtue of an industrial injury, whether or not a petition for benefits has been filed. For example, Florida Administrative Code Rules 69L-3.002 through 3.025 (under the Chapter Title "Workers’ Compensation Claims”) describe duties and obligations of "Claims-handling Entities]" when industrial injuries occur, which include: filing a first report of injury upon notice (from any source), providing informational material to the injured employee, filing multiple forms, and providing benefits-all regardless of whether the injured employee ever files a formal petition for benefits. Similarly, sub-subsection 440.105(2)(b), Florida Statutes (2014), makes it unlawful for an insurance company to revoke ,an insurance policy "because an employer has returned an employee to work or hired an employee who has filed a workers’ compensation claim." (Emphasis supplied.) Under this statutory provision an insurance company could not revoke a policy on grounds an employer had returned an employee to work, or hired an employee entitled to benefits under chapter 440, even if the injured employee had not filed a formal petition for benefits. Furthermore, sub-subsections 440.20(1 l)(a) and (c) permit a "claimant” to settle a workers' compensation case or claim, whether or not a petition for benefits has ever been filed. The dissent unjustifiably assumes that the terms "petition for benefits” and "claim” can be used interchangeably in the context of the present case.