# Third District Court of Appeal
## State of Florida

Opinion filed December 4, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-0797
Lower Tribunal No. 20-9874 SP

_____

**Allstate Indemnity Company**,
Appellant,

vs.

**Gady Abramson, D.C., P.A., etc.**,
Appellee.

An Appeal from the County Court for Miami-Dade County, Gloria Gonzalez-Meyer, Judge.

Shutts & Bowen LLP, Daniel E. Nordby (Tallahassee), and Garrett A. Tozier (Tampa), for appellant.

Landau & Associates, P.A., and Matthew Emanuel (Sunrise); Todd Landau, P.A., and Todd Landau (Fort Lauderdale), for appellee.

Before LOGUE, C.J., and MILLER and BOKOR, JJ.

MILLER, J.

This personal injury protection ("PIP") dispute implicates an issue of statutory construction, namely, whether an insurer is authorized under Florida's No-Fault Law to limit reimbursement for a modality that is not listed on the applicable Calendar Year (CY) Physician Fee Schedule of Medicare Part B to eighty percent of the maximum allowance under the workers' compensation schedule. We conclude that limiting payment in this manner is authorized under section 627.736(5)(a)(1), Florida Statutes (2019), and therefore reverse.

I

Zoila Crespo was insured under a PIP policy issued by appellant, Allstate Indemnity Company. The policy provided for the payment of eighty percent of reasonable medical expenses, limited to the maximum charges set forth in section 627.736(5)(a)(1). Crespo was injured in an automobile accident and treated by appellee, Gady Abramson, D.C., P.A., a medical provider. The provider administered aqua therapy and then sought reimbursement under an assignment of benefits using Current Procedural Terminology ("CPT") code 97039. This code is used by providers when a physical medicine and rehabilitation modality does not have a specific code that is reimbursable under Medicare. Allstate limited reimbursement to eighty percent of the maximum reimbursable allowance under workers'

2

compensation because the aqua therapy modality was not listed on the applicable CY Physician Fee Schedule.

The provider filed suit against Allstate in the county court, and the parties both sought summary judgment. The provider contended aqua therapy was reimbursable by Medicare on a case-by-case basis at the same rate as fluidized dry heat therapy or whirlpool therapy, both of which are listed under CPT code 97022 on the CY 2019 Physician Fee Schedule. Hence, there was no material factual issue, and it was entitled to reimbursement at the analogous rate. Allstate, on the other hand, argued that limiting compensation in accord with the workers' compensation schedule was permissible under the No-Fault Law because aqua therapy was not listed on the Medicare schedule. The trial court granted summary judgment in favor of the provider, and this appeal ensued.

**II**

We review summary judgment rulings and issues of statutory interpretation de novo. See State v. Espinoza, 264 So. 3d 1055, 1062 (Fla. 3d DCA 2019). Because Florida's No-Fault Law is incorporated into the policy in this case, the cornerstone of our analysis is section 627.736, Florida Statutes.

**A**

3

Legislative intent, of course, is the polestar that guides the court's inquiry as to statutory interpretation.  Allstate Ins. Co. v. Holy Cross Hosp., Inc., 961 So. 2d 328, 334 (Fla. 2007); see also Vocelle v. Knight Bros. Paper Co., 118 So. 2d 664, 667 (Fla. 1st DCA 1960) ("Every statute must be construed as a whole and the legislative intent determined, if it be possible, from what is said in the statute.").  "A basic tenet of statutory interpretation is that a statute should be interpreted to give effect to every clause in it, and to accord meaning and harmony to all of its parts."  Fortune v. Gulf Coast Tree Care Inc., 148 So. 3d 827, 828 (Fla. 1st DCA 2014) (quoting Jones v. ETS of New Orleans, Inc., 793 So. 2d 912, 914–15 (Fla. 2001)) (internal quotations omitted).  "No part of a statute, not even a single word, should be ignored, read out of the text, or rendered meaningless, in construing the provision."  Scherer v. Volusia Cnty. Dep't of Corr., 171 So. 3d 135, 139 (Fla. 1st DCA 2015).

**B**

The No-Fault Law provides, in pertinent part:

(5) Charges for treatment of injured persons.—

(a) A physician, hospital, clinic, or other person or institution lawfully rendering treatment to an injured person for a bodily injury covered by personal injury protection insurance may charge the insurer and injured party only a reasonable amount

4

pursuant to this section for the services and supplies rendered . . . .

1. **The insurer may limit reimbursement to 80 percent of the following schedule of maximum charges:**

*                 *               *

    **f. For all other medical services, supplies, and care, 200 percent of the allowable amount under:**

    **(I) The participating physicians fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).**

    (II) Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

    (III) The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

    **However, if such services, supplies, or care is not reimbursable under Medicare Part B, as provided in this sub-subparagraph, the insurer may limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation**, as determined under s. 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by the insurer.

2. **For purposes of subparagraph 1., the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the service year in which the services, supplies, or care is**

5

**rendered and for the area in which such services, supplies, or care is rendered**, and the applicable fee schedule or payment limitation applies to services, supplies, or care rendered during that service year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B. For purposes of this subparagraph, the term "service year" means the period from March 1 through the end of February of the following year.

§ 627.736(5)(a)(1)–(2), Fla. Stat. (emphasis added).

In this case, none of the services were rendered by an ambulatory surgical center or clinical laboratory. Hence, reimbursement falls under subsubsection (5)(a)(1)(f)(I). This particular provision authorizes the insurer to limit payment to eighty percent of two hundred percent of the amount allowed under "the participating physicians fee schedule of Medicare Part B." This is markedly different than the provision for ambulatory surgical services or clinical laboratories, which more broadly allows for payment consistent with "Medicare Part B."

## C

It is axiomatic that the services at issue here, aqua therapy, were not listed on the participating physicians fee schedule. The provider argues, however, that the services were "reimbursable under Medicare Part B" on a

6

case-by-case basis. It therefore follows that it was entitled to reimbursement consistent with that paid locally for similar services.

We conclude that this construction defeats the plain language of the statute. Our reasoning in this regard is threefold. First, in distinguishing services provided by ambulatory surgical centers and clinical laboratories from "all other medical services, supplies, and care," the Legislature chose different language to assign the reimbursement rate. As to the former, the statute authorizes reimbursements consistent with the allowable amount under Medicare Part B. In contrast, reimbursement for the latter must conform to the participating physicians fee schedule of Medicare Part B. Had the Legislature wished to expand reimbursement for the latter services beyond the fee schedule on a case-by-case basis, it could have so specified.

Second, the statute later reiterates that whether a service is reimbursable under Medicare Part B is determined by the express terms of the statute, rather than by local custom. In this regard, the statute provides, "[I]f such services, supplies, or care is not reimbursable under Medicare Part B, as provided in this sub-subparagraph, the insurer may limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation . . . ." § 627.736(5)(a)(1)(f), Fla. Stat.

7

"Viewed properly as rules of thumb or guides to interpretation, rather than as inflexible rules, the traditional canons of statutory interpretation can aid the interpretive process from beginning to end . . . ." Conage v. United States, 346 So. 3d 594, 598 (Fla. 2022). One such canon, the last antecedent canon, provides that, where no contrary intention appears in a statute, qualifying words and phrases refer to the last antecedent. See Kasischke v. State, 991 So. 2d 803, 811 (Fla. 2008) ("[R]elative and qualifying words, phrases and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to, or including, others more remote.") (quoting City of St. Petersburg v. Nasworthy, 751 So. 2d 772, 774 (Fla. 1st DCA 2000)). Consistent with this construction, "as provided in this sub-subparagraph" is immediately preceded by the Medicare reimbursement provision. Whether a modality is reimbursable under Medicare Part B, in turn, is dependent upon the nature of the services. Ambulatory surgical services and clinical laboratory services are generally reimbursable under Medicare Part B, while all other services are more specifically reimbursable under the participating physicians fee schedule of Medicare Part B. Hence, the insurer is entitled to resort to reimbursement under workers' compensation if the services are non-ambulatory and non-clinical and do not appear on the schedule.

8

Third, the statute further provides, "[T]he applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation reflected in the annual Medicare Part B fee schedule." § 627.736(5)(a)(2), Fla. Stat. This choice of language reinforces the fact that the Legislature afforded the fee schedule near-talismanic significance. To read the statute otherwise would net the unintended effect of requiring an insurer to reimburse the provider for any modality, so long as the service was billed under a generic code and arguably analogous to another listed service. Such a construction would render the two alternative statutory provisions pertaining to the workers' compensation schedule and non-reimbursable services meaningless because virtually any service could be considered compensable under Medicare.

**D**

Finally, to the extent the provider invokes Allstate Fire & Casualty Insurance Co. v. Perez ex rel. Jeffrey Tedder, M.D., P.A., 111 So. 3d 960 (Fla. 2d DCA 2013), and United Automobile Insurance Co. v. Lauderhill Medical Center LLC, 350 So. 3d 754 (Fla. 4th DCA 2022), for a contrary result, a close examination yields the conclusion that both are factually inapposite. In the first case, Perez, the Second District Court of Appeal analyzed an older version of the No-Fault Law and concluded the insurer

9

was not limited by the workers' compensation schedule because, even though the physician used an outdated CPT code, the service was expressly reimbursable under Medicare Part B. See 111 So. 3d at 963 ("The nature of the medical service . . . controls" and "the services represented by [the outdated] . . . code [were] still covered by Medicare Part B . . . ."). In the second case, Lauderhill, the Fourth District Court of Appeal similarly found that the modality at issue, vibe therapy, was reimbursable under Medicare Part B, so the provider was not constrained to reimbursement under the workers' compensation schedule.

## III

Here, however, the record demonstrates that aqua therapy was not reimbursable under the fee schedule. Analogizing the modality to another listed service does not vary this immutable fact. Accordingly, we conclude the insurer was authorized to limit reimbursement consistent with the workers' compensation schedule. We therefore reverse the judgment under review and remand for further proceedings.

Reversed and remanded.