DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

SHEIK ISLAND FARM, INC.; CYPRESS RIDGE
FARM, INC.; J. PATRICK MICHAELS, JR.; and
LISA LEVATINO,

Appellants,

v.

COVINGTON FARM, INC.; JAMES S. STALNAKER, JR.;
and BARBARA STALNAKER,

Appellees.

No. 2D2025-0151
_____

ISSUE DATE

Appeal from the Circuit Court for Pasco County; Kimberly Sharpe Byrd, Judge.

Gary Ragnar von Stange and Guy M. Burns of Johnson, Pope, Bokor, Ruppel & Burns, LLP, St. Petersburg; Sharon E. Krick of Johnson, Pope, Bokor, Ruppel & Burns, LLP, Clearwater, for Appellants.

Duane A. Daiker and Matthew E. Maggard of Shumaker, Loop & Kendrick, Tampa; David S. Johnson of Johnson Litigation Group, Tampa, for Appellees.

LUCAS, Chief Judge.

In this case, we confront an existential question: is renting out a barn for weddings the same thing as operating a farm?  The circuit court

effectively ruled that it was.  Construing the various statutes implicated in this dispute, we must disagree with the court's ruling.

I.

Sheik Island Farm, Inc., Cypress Ridge Farm, Inc., J. Patrick Michaels, Jr., and Lisa Levatino (collectively, Sheik Farm) board horses in Dade City.  Sheik Farm's property is situated on a dirt road called Covington Road.  In 2016, Barbara and James Stalnaker purchased the property immediately south of Sheik Farm from J. Patrick Michaels, Jr., and Lisa Levatino.  This property would ultimately be the locus of Covington Farm's operation.  In 2017, Covington Farm applied for a building permit to construct a barn.  The permit gave no indication what the barn would be used for.

According to the summary judgment evidence presented below, the barn Covington Farm eventually built was a wedding venue.  Indeed, Covington Farm advertised it as an "Elegant Barn Venue."  Covington Farm hosted its first wedding in 2017, and since then it has built a successful event business around the barn and its surroundings. Covington Farm's wedding barn features air conditioning, restrooms, a fireplace, a bar, a catering kitchen, separate bride and groom dressing areas, and a lounge.

Ms. Stalnaker testified that she works full-time coordinating weddings and events at Covington Farm.  The business has done well enough that she had to hire a full-time employee to assist her. Covington Farm's 2021 tax return lists "Facilities Rentals" as its sole business activity.  And all of Covington Farm's revenues for that year came from weddings and similar events.  Sheik Farm submitted printouts from a website featuring Covington Farm as a wedding

destination, which included several favorable reviews from past customers.

Covington Farm's property, however, was designated agricultural by the Pasco County Property Appraiser. Although there appears to have been a prior dispute between the Property Appraiser and Covington Farm about the property's greenbelt designation, Covington Farm's property has consistently remained classified as agricultural pursuant to section 193.461, Florida Statutes, since 2018.

Sheik Farm claims that Covington Farm's event venue has caused a variety of problems for its business. It alleges that increased road traffic and speeding cars coming and going to Covington Farm generate excessive noise, garbage, and dust from the dirt road. All of which, it claims, has adversely affected the horses on its property.

On April 17, 2019, Sheik Farm filed an initial complaint against Covington Farm in the circuit court. As amended, Sheik Farm's complaint asserted four causes of action—two counts for private nuisance, one count asserting a public nuisance, and one count for violation of section 108.3 of the Pasco County Land Development Code (the Code). Covington Farm answered, generally denying Sheik Farm's allegations, and further asserted several affirmative defenses.

Covington Farm filed a motion for summary judgment, which the circuit court heard on November 6, 2024. The circuit court entered an order granting Covington Farm's motion and entering final judgment in its favor against Sheik Farm on December 19, 2024. Essentially, the court determined that the agricultural classification of Covington Farm's property was fatal to every one of Sheik Farm's claims because of several statutes. We can summarize the court's detailed findings and conclusions as follows: (1) since 2018, the Pasco County Property

3

Appraiser classified the Covington Farm Property as agricultural pursuant to section 193.461, Florida Statutes (2018); (2) the Property Appraiser's agricultural classification was "dispositive of Plaintiffs' claim that Defendants are violating the Code because Plaintiffs' claim is expressly preempted by Fla. Stat. § 570.85 and because the property and barn are exempt from the Code pursuant to Fla. Stat. § 604.50(1)"; and (3) as to the nuisance claims, Florida's Right to Farm Act applied to the Covington Farm property and "[t]he language, intent and stated purpose of the Right to Farm Act convince[d] the Court that the Property Appraiser's classification determination is the key to whether the Act's limitations on nuisance lawsuits applies." The court further determined that because none of the allegations or summary judgment evidence concerned compliance with state or federal environmental laws, regulations, or best management practices, those three counts failed as a matter of law. Sheik Farm has initiated this appeal asking us to review the court's summary judgment.

## II.

Our review of a summary judgment is de novo. *Cordero v. Fla. Ins. Guar. Ass'n*, 354 So. 3d 1150, 1153 (Fla. 2d DCA 2023) (citing *LoBello v. State Farm Fla. Ins.*, 152 So. 3d 595, 598 (Fla. 2d DCA 2014)). In deciding an issue on summary judgment, Florida Rule of Civil Procedure 1.510 applies the "federal summary judgment standard," which essentially mirrors the standard for a motion for a directed verdict. *See In re Amends. to Fla. R. Civ. P. 1.510*, 317 So. 3d 72, 75 (Fla. 2021). Issues of statutory interpretation are also subject to de novo review. *See Steak N Shake, Inc. v. Ramos*, 415 So. 3d 107, 111 (Fla. 2025) (citing *Ripple v. CBS Corp.*, 385 So. 3d 1021, 1027 (Fla. 2024)).

III.

The resolution of this appeal requires us to delve into several statutes. Whenever we interpret statutes, "we follow the 'supremacy-of-text principle'—namely, the principle that '[t]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means.' " *Ham v. Portfolio Recovery Assocs.*, 308 So. 3d 942, 946 (Fla. 2020) (alteration in original) (quoting Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012)). "[O]ur first (and often only) step . . . is to ask what the Legislature actually said in the statute, based upon the common meaning of the words used." *Shepard v. State*, 259 So. 3d 701, 705 (Fla. 2018) (quoting *Schoeff v. R.J. Reynolds Tobacco Co.*, 232 So. 3d 294, 313 (Fla. 2017) (Lawson, J., concurring in part and dissenting in part)). Traditional canons of statutory interpretation, "[v]iewed properly as rules of thumb," can "aid the interpretive process." *Conage v. United States*, 346 So. 3d 594, 598 (Fla. 2022). Because the Right to Farm Act curtails common law nuisance claims, we must also be mindful that "[s]tatutes that alter the common law are narrowly construed." *Hardee County v. FINR II, Inc.*, 221 So. 3d 1162, 1165 (Fla. 2017).

A.

We will begin with the circuit court's ruling that the Florida Right to Farm Act, section 823.14, Florida Statutes, barred Sheik Farm's nuisance claims. The Florida Right to Farm Act provides, in pertinent part, as follows:

> **(2) Legislative findings and purpose.**—The Legislature finds that agricultural production is a major contributor to the economy of the state; that agricultural lands constitute unique and irreplaceable resources of statewide importance; that the continuation of agricultural activities preserves the landscape and environmental resources of the state,

5

contributes to the increase of tourism, including agritourism, and furthers the economic self-sufficiency of the people of the state; and that the encouragement, development, improvement, and preservation of agriculture will result in a general benefit to the health and welfare of the people of the state. The Legislature further finds that agricultural activities conducted on farm land in urbanizing areas are potentially subject to lawsuits based on the theory of nuisance and that these suits encourage and even force the premature removal of the farm land from agricultural use. It is the purpose of this act to protect reasonable agricultural and complementary agritourism activities conducted on farm land from nuisance suits and other similar lawsuits.

**(3) Definitions.**—As used in this section:

(a) "Agritourism activity" has the same meaning as provided in s. 570.86.

. . . .

(c) "Farm" means the land, buildings, support facilities, machinery, and other appurtenances used in the production of farm or aquaculture products.

(d) "Farm operation" means all conditions or activities by the owner, lessee, agent, independent contractor, or supplier which occur on a farm in connection with the production of farm, honeybee, or apiculture products or in connection with complementary agritourism activities. These conditions and activities include, but are not limited to, the marketing of farm products at roadside stands or farm markets; the operation of machinery and irrigation pumps; the generation of noise, odors, dust, fumes, and particle emissions; ground or aerial seeding and spraying; the placement and operation of an apiary; the application of chemical fertilizers, conditioners, insecticides, pesticides, and herbicides; agritourism activities; and the employment and use of labor.

(e) "Farm product" means any plant, as defined in s. 581.011, or animal or insect useful to humans and includes, but is not limited to, any product derived therefrom.

(f) "Nuisance" means any interference with reasonable use and enjoyment of land, including, but not limited to, noise, smoke, odors, dust, fumes, particle emissions, or

6

vibration. The term also includes all claims that meet the requirements of this definition, regardless of whether the plaintiff designates those claims as brought in nuisance, negligence, trespass, personal injury, strict liability, or other tort.

**(4) Farm operations; nuisance.**—

(a) No farm operation which has been in operation for 1 year or more since its established date of operation and which was not a nuisance at the time of its established date of operation shall be a public or private nuisance if the farm operation conforms to generally accepted agricultural and management practices, except that the following conditions shall constitute evidence of a nuisance:

1. The presence of untreated or improperly treated human waste, garbage, offal, dead animals, dangerous waste materials, or gases which are harmful to human or animal life.

2. The presence of improperly built or improperly maintained septic tanks, water closets, or privies.

3. The keeping of diseased animals which are dangerous to human health, unless such animals are kept in accordance with a current state or federal disease control program.

4. The presence of unsanitary places where animals are slaughtered, which may give rise to diseases which are harmful to human or animal life.

. . . .

(c) A farm may not be held liable for nuisance unless the plaintiff proves by clear and convincing evidence that the claim arises out of conduct that did not comply with state or federal environmental laws, regulations, or best management practices.

Subsection (3)(a) of the Act[1] references section 570.86, Florida Statutes (2019), which, in turn, defines "Agritourism activity" to mean:

---

[1] We note that at the time the claims at issue in this case would have accrued and when this action was filed, a prior version of section 823.14 was in effect, one which did not include the references to "Agritourism activity" or section 570.86 (which were added later in a

7

[A]ny agricultural related activity consistent with a bona fide farm, livestock operation, or ranch or in a working forest which allows members of the general public, for recreational, entertainment, or educational purposes, to view or enjoy activities, including farming, ranching, historical, cultural, civic, ceremonial, training and exhibition, or harvest-your-own activities and attractions. An agritourism activity does not include the construction of new or additional structures or facilities intended primarily to house, shelter, transport, or otherwise accommodate members of the general public.

§ 570.86(1).

Although there are a few provisions for us to work through, the operative terms we need to construe are fairly limited. In fact, as we will show, a proper construction of the Florida Right to Farm Act in this case boils down to the meaning of a single word.

2021 revision to the statute). *See* § 823.14, Fla. Stat. (2019); *R.J. Reynolds Tobacco Co. v. Sheffield*, 266 So. 3d 1230, 1233 (Fla. 5th DCA 2019) ("In the absence of express statutory language to the contrary, Florida law generally holds that the applicable version of a statute is the version in effect at the time a cause of action accrues." (citing collected cases)); *see also* 2021 Fla. Sess. Law Serv. Ch. 2021-7 (C.S.C.S.C.S.S.B. 88) (West). Nevertheless, the parties' respective arguments, both below and on appeal, invoked the current version of section 823.14. We will similarly proceed with our analysis under the version of the statute currently in effect. *See Sunset Harbour Condo. Ass'n v. Robbins*, 914 So. 2d 925, 928 (Fla. 2005) ("In order to be preserved for further review by a higher court, an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved." (quoting *Tillman v. State*, 471 So. 2d 32, 35 (Fla. 1985))); *Janelle v. Veterans Villas II Homeowners Ass'n*, 413 So. 3d 211, 212 n.1 (Fla. 2d DCA 2025) ("When points, positions, facts and supporting authorities are omitted from the brief, a court is entitled to believe that such are waived, abandoned, or deemed by counsel to be unworthy." (quoting *Polyglycoat Corp. v. Hirsch Distribs., Inc.*, 442 So. 2d 958, 960 (Fla. 4th DCA 1983))); *see also Polyglycoat Corp.*, 442 So. 2d at 960 ("[I]t is not the function of the Court to rebrief an appeal.").

1.

Two subsections of the Florida Right to Farm Act provide limitations on common law nuisance claims, and they both turn on the definition of a "farm." First, subsection (4)(c) protects "farms" as follows: "*A farm* may not be held liable for nuisance unless . . . ." § 823.14(4)(c) (emphasis added). Second, subsection (4)(a) declares that a "farm operation" shall not be a public or private nuisance subject to certain conditions and limitations. Here as well, however, the statutory definition of "farm operation" under subsection (3)(d) hinges on there being a farm: " 'Farm operation' means all conditions or activities . . . *which occur on a farm* in connection with the production of farm, honeybee, or apiculture products or in connection with complementary agritourism activities." § 823.14(3)(d) (emphasis added).

True, "agritourism activities" has a fairly broad sweep of "agricultural related activity" (which include those that would invite the general public "to view or enjoy activities, including farming, ranching, historical, cultural, civic, [and] ceremonial . . . activities and attractions"), *see* § 570.86(1), but the term "agritourism activities" is limited to those that are "complementary" and "consistent with a bona fide farm, livestock operation, or ranch."[2] *See* § 823.14(3)(d). And under section 823.14(3)(d)'s definition of "farm operation," any consideration of complementary agritourism activities must first be predicated on there being "a farm" that the activities take place upon. *See* § 823.14(3)(d); *see also Scherer v. Volusia Cnty. Dep't of Corr.*, 171 So. 3d 135, 139 (Fla. 1st DCA 2015) ("No part of a statute, not even a single word, should be

---

[2] No one has ever suggested that Covington Farm could constitute a "working forest" under section 570.86(1).

9

ignored, read out of the text, or rendered meaningless, in construing the provision.").

What is a farm, then? The Act defines the term for us, so we must apply that definition. *See State v. Crose*, 378 So. 3d 1217, 1237 (Fla. 2d DCA 2024) (en banc) (observing that "we would expect to find the boundaries" of a statute's defined term "within the boundaries of the section that defines that term"); *Deloatch v. State*, 360 So. 3d 1165, 1169 (Fla. 4th DCA 2023) ("When a statute includes an explicit definition, [courts] must follow that definition, even if it varies from that term's ordinary meaning." (alteration in original) (quoting *Stenberg v. Carhart*, 530 U.S. 914, 942 (2000))); *Fla. Ins. Guar. Ass'n, v. Bernard*, 140 So. 3d 1023, 1030 (Fla. 1st DCA 2014) ("[T]he definition of a term in the definitional section of a statute controls the construction of that term wherever it appears in the statute.").

Under section 823.14(3)(c), "Farm" means "the land, buildings, support facilities, machinery, and other appurtenances used in the production of farm or aquaculture products." No one has suggested this case implicates aquaculture, so we must ask whether Covington Farm's operation could be said to have been "used in the production" of "farm products." Here as well, we have a statutory definition to apply. Subsection (3)(e) of the Florida Right to Farm Act defines "Farm product" to mean "any plant, as defined under section 581.011, or animal or insect useful to humans." Finally, under section 581.011(27), "Plants and plant products" has a comprehensive definition of "trees, shrubs, vines, forage and cereal plants, and all other plants and plant parts, including cuttings, grafts, scions, buds, fruit, vegetables, roots, bulbs, seeds, wood, lumber, and all products made from them, unless

10

specifically excluded by the rules of the department [of agriculture and consumer services]."

So, if Covington Farm's property is being used to produce plants, animals, or insects useful to humans, then it can be considered a farm. And if it can be considered a farm, then it has statutory protection from nuisance claims under section 823.14(4)(c). Similarly, if its farming activities are part of a "farm operation" then section (4)(b)'s protection applies.[3] But as we discussed earlier, section 823.14(3)(d) tethers farm operations to there being a farm. Under either subsection of section 823.14(4), then, the pertinent question the circuit court should have addressed on Sheik Farm's nuisance claims was whether there was any genuine dispute of any material fact that Covington Farm was, indeed, a "farm." *See* Fla. R. Civ. P. 1.510(a).

From our de novo review, we conclude that there were genuine disputes over that material fact. Sheik Farm presented evidence—testimony from Covington Farm's employees, tax returns, and marketing materials—from which a jury could reasonably conclude that this property was not being run as a farm, but rather as a commercial wedding venue. *See In re Amends. to Fla. R. Civ. P. 1.510*, 317 So. 3d at 75 ("[T]he correct test for the existence of a genuine factual dispute is whether 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986))). A jury could also conclude that the air-

---

[3] Neither party has argued what, if any, distinction there may be in this case between the nuisance liability limitations under subsection (4)(c) versus subsection (4)(b). Because of our construction of the operative term "farm," which spans both subsections, and since the summary judgment evidence in this case did not support the finding that there was no material fact in dispute that Covington Farm was operating as such, we need not resolve that issue now.

conditioned wedding barn with its fireplace, bar, lounge, and changing rooms was not "consistent with a *bona fide* farm, livestock operation or ranch" under section 570.86's definition of agritourism activity. *See* § 570.86(1) (emphasis added); *Travelers Home & Marine Ins. Co. v. Gallo*, 246 So. 3d 560, 563 n.1 (Fla. 5th DCA 2018) (defining "bona fide" as "[m]ade in good faith; without fraud or deceit . . . [s]incere; genuine" (quoting *Black's Law Dictionary* (10th ed. 2014))).

2.

Two points appear to have led the court below into error on this issue. First, the circuit court's ruling placed considerable emphasis on the legislative findings found in the Florida Right to Farm Act. Section 823.14(2) does include an expression of legislative intent to protect "agricultural activities conducted on farm land" from nuisance lawsuits. That subsection concludes with the pronouncement: "It is the purpose of this act to protect reasonable agricultural and complementary agritourism activities conducted on farm land from nuisance suits and other similar lawsuits."

Nothing within section 823.14(2)'s statement, however, alters the operative text that appears later in the Act, certainly not in the manner the circuit court applied. When construing a statutory act, legislative statements of purpose adopted contemporaneously with the act's enactment warrant a court's consideration; after all, these enacted statements are part of the enactment's text and the overall statutory context. *Cf. Vericker v. Powell*, 406 So. 3d 939, 944–45 (Fla. 2025) (acknowledging Florida's Anti-SLAPP statute's stated purpose of safeguarding the exercise of free speech rights by expeditiously disposing of prohibited lawsuits but holding that a denial of an anti-SLAPP motion to dismiss did not, in itself, justify certiorari relief); *Coates v. R.J.*

12

*Reynolds Tobacco Co.*, 365 So. 3d 353, 354 (Fla. 2023) (" '[T]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means.' . . . [W]e do not add words to a statute in the guise of interpreting it." (first quoting *Levy v. Levy*, 326 So. 3d 678, 681 (Fla. 2021); and then citing *Statler v. State*, 349 So. 3d 873, 879 (Fla. 2022))); *Gordon v. Fishman*, 253 So. 3d 1218, 1220 (Fla. 2d DCA 2018) ("The cardinal rule of statutory construction is that a statute should be construed so as to ascertain and give effect to the intention of the Legislature as expressed in the statute." (quoting *Gaulden v. State*, 195 So. 3d 1123, 1125 (Fla. 2016)))).  But statements of legislative intent are not a kind of über-text in the process of statutory construction. Whatever their role in the interpretive process, they cannot be used to subtract operative provisions or subvert operative text in a statute.

Section 823.14(2)'s expressions of intent align with the Florida Right to Farm Act's operative text.  Subsection (2)'s statements of legislative purpose pertain to "agricultural production," "agricultural lands," "agricultural activities," and "agriculture" more broadly.  The legislature was concerned about the effect nuisance lawsuits could have on "agricultural activities *conducted on farm land* in urbanizing areas." Thus, this prefatory subsection simply summarizes what the subsequent, operative text in the Act accomplishes—protecting *farms* from neighbors' nuisance claims when surrounding rural properties become more urban.[4]  As we discussed in the prior section, whether Covington Farm is

---

[4] There is perhaps a bit of irony here, insofar as the plaintiffs in this case include a farm suing a neighbor for allegedly utilizing their property for a more "urbanized" use.  That, too, however, has no effect on how a court should construe the Florida Right to Farm Act.  The statute says what it says, and it applies to what it says it applies to.

indeed operating a farm or engaged in agriculture is very much a disputed issue of fact.

Second, the circuit court treated the Pasco County Property Appraiser's agricultural classification of Covington Farm's property as if that were dispositive of Sheik Farm's claims. But nothing within the Florida Right to Farm Act states that a greenbelt designation under section 193.461, Florida Statutes (2018), ipso facto satisfies the definitions of "farm" or "farm operation" under the Act. Indeed, those definitional sections do not mention the Property Appraiser or the ad valorem taxation statutes at all. Conversely, section 193.461(1)'s direction to property appraisers to classify property as either agricultural or nonagricultural does not reference the Florida Right to Farm Act but is instead tied to the purpose of ad valorem tax assessment. *See* § 193.461(1) ("The property appraiser shall, on an annual basis, classify *for assessment purposes* all lands within the county as either agricultural or nonagricultural." (emphasis added)). Simply put, while the operative provisions in these different statutes do address property used for agriculture and farming, they do not directly interact with, or even reference, each other. A county property appraiser's agricultural designation of property is not necessarily irrelevant to the question of whether property is or isn't a farm under the Florida Right to Farm Act; but it's certainly not dispositive. If the legislature had intended to imbue such importance to a county property appraiser's determination, it could have easily expressed that intention somewhere in the text of the definitions it enacted. Because the legislature did not do so, it was error for the circuit court to defer to the property appraiser's designation in the manner that it did.

B.

14

Sheik Farm's claim for injunctive relief based on alleged violations of the Pasco County Code presents a slightly closer question, but the court's summary judgment on this count must also be reversed for much the same reason as the other counts: the record reflects a genuine dispute of material fact over whether Covington Farm's operation fits within a statutory term.

The legislature enacted a separate statute that limits the scope of building code regulation on agricultural lands, section 604.50, Florida Statutes (2021).  Section 604.50(1) provides:

> Notwithstanding any provision of law to the contrary, any *nonresidential farm building*, farm fence, or farm sign that is located on lands *used for bona fide agricultural purposes* . . . is exempt from the Florida Building Code and any county or municipal code or fee, except for code provisions implementing local, state, or federal floodplain management regulations.

(Emphasis added.)

Subsection (2) then gives definitions to the following pertinent terms:

> (a) "Bona fide agricultural purposes" has the same meaning as provided in s. 193.461(3)(b).

> (b) "Farm" has the same meaning as provided in s. 823.14.

> . . . .

> (d) "Nonresidential farm building" means any temporary or permanent building or support structure that is classified as a nonresidential farm building on a farm under 553.73(10)(c) or that is used primarily for agricultural purposes, is located on land that is an integral part of a farm operation or is classified as agricultural land under s. 193.461, and is not intended to be used as a residential dwelling.  The term may include, but is not limited to, a barn, greenhouse, shade house, farm office, storage building, or poultry house.

§ 604.50(2).

15

Here as well, the circuit court deemed the county property appraiser's agricultural designation as dispositively foreclosing Sheik Farm's claim. In essence, the court found that since Covington Farm's property was classified as agricultural, it was not subject to the Pasco County Code pursuant to section 604.50(1), and as such, Sheik Farm could not seek injunctive relief for an alleged violation of that code.[5] A close reading of the statute, however, does not support that construction.

The property appraiser's agricultural designation would bear on the determination of whether Covington Farm's property was being "used for bona fide agricultural purposes," but that is only part of the inquiry here. What kinds of buildings on greenbelt lands are exempt from local government building codes? Section 604.50(1)'s exemption applies to a "nonresidential farm building." That term is also defined by agricultural classification under section 193.461, but only partly. Section 604.50(2)(d)'s definition of a nonresidential farm building includes the conjunctive "and" followed by a final qualification, so that a nonresidential farm building is one that is "located on land that is . . . classified as agricultural land under s. 193.461, *and* is not intended to be used as a residential building." *See City of New Port Richey v. Lamko*, 359 So. 3d 840, 844 (Fla. 2d DCA 2023) ("Because the statute is written in the conjunctive, all three requirements must be met . . . ."); *United States v. Garcon*, 54 F.4th 1274, 1278 (11th Cir. 2022) (" 'And' means

_____

[5] The circuit court construed this statute as a form of "express preemption," but that is inaccurate. Section 604.50 does not state that it preempts anything; and it doesn't purport to prohibit all local regulation over a particular subject matter. *See Sarasota All. for Fair Elections, Inc. v. Browning*, 28 So. 3d 880, 886 (Fla. 2010) ("Express preemption of a field by the Legislature must be accomplished by clear language stating that intent."). At most, section 604.50 simply provides an exemption from certain code regulations.

'along with or together with.' So when 'and' is used to connect a list of requirements, the word ordinarily has a 'conjunctive' sense, meaning that all the requirements must be met." (citation omitted) (citing *United States v. Palomar-Santiago*, 593 U.S. 321, 326 (2021))), *abrogated on other grounds by Pulsifer v. United States*, 601 U.S. 124 (2024).

"Residential" is not defined in the statute, but we can discern its plain, ordinary meaning in this context. *See State v. Woodson*, 349 So. 3d 510, 511 (Fla. 5th DCA 2022) ("Statutory interpretation begins with consideration of the plain meaning of the words as used in the relevant statutes." (citing *Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So. 3d 362, 367 (Fla. 2013))). A building meant primarily for human habitation or dwelling could be said to be "residential" for purposes of section 604.50(2)(d), as opposed to one that is intended primarily for farming or "bona fide agricultural purposes." We can check that meaning against the non-exhaustive list of examples subsection (2)(d) concludes with—a barn, greenhouse, shade house, farm office, storage building, or poultry house—all of which connote a use devoted to some type of agricultural production. *Cf. Dep't of Child. & Fams. v. Herstein*, 399 So. 3d 384, 391 (Fla. 1st DCA 2025) ("And 'the commonsense canon of *noscitur a sociis* . . . counsels that a word is given more precise content by the neighboring words with which it is associated.' " (alteration in original) (quoting *United States v. Williams*, 553 U.S. 285, 294 (2008))). Finally, subsection (2)(b) further instructs us that the word "farm," as used throughout section 604.50, means the same thing that it does under the Florida Right to Farm Act, section 823.14(3)(c), a definition we've already thoroughly covered.

The same conclusion we reached in the prior section obtains here. A reasonable jury could have concluded that Covington Farm's wedding

17

barn was not, in fact, a "nonresidential farm building" of a piece with a barn or office one might find on a farm devoted to producing plants, animals, or insects useful to humans. *Accord* § 823.14(3)(e). The circuit court's summary judgment as to count IV of Sheik Farm's complaint was, therefore, improper.

IV.

Accordingly, we reverse the summary judgment entered below in favor of Covington Farm. We remand this case for further proceedings consistent with this opinion.

Reversed; remanded.

SLEET and ROTHSTEIN-YOUAKIM, JJ., Concur.

_____

Opinion subject to revision prior to official publication.